# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-EC-01526-SCT

*RICKEY W. THOMPSON*

*v.*

*ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, LEE COUNTY DEMOCRATIC PARTY EXECUTIVE COMMITTEE, AND LEE COUNTY ELECTION COMMISSION, AND MARCUS CRUMP*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | CARROLL RHODES |
| | WILLIE C. ALLEN |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KRISSY CASEY NOBILE |
| | HAROLD EDWARD PIZZETTA, III |
| | WILLIAM C. MURPHREE |
| | GARY L. CARNATHAN |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 05/11/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Former Justice Court Judge Rickey Thompson challenges the Lee County Democratic Executive Committee's decision to withhold Thompson's name from the general-election

ballot for a new term as a justice court judge, based on the Court's order removing him from the office of justice court judge prior to the election. Thompson sought relief from the Circuit Court of the First Judicial District of Hinds County; however, the circuit court dismissed Thompson's case, finding him ineligible for judicial office.

¶2. The primary question presented today is the following: When a justice court judge is removed from office, what shall be the duration of the prohibition against the removed person reentering the office in question? The parties offer two alternative answers. The Attorney General contends that removal from office is permanent, and that, once removed from office, a justice court judge may not return to it by reelection or otherwise. On the other hand, Judge Thompson takes the position that removal from office means that the judge in question must vacate the office but may later return to it. More accurately, that removal from office cannot disqualify one from holding the office again in the future, because Article 6, Section 171 of the Mississippi Constitution does not list as a requirement for eligibility to serve that a candidate has never been removed from office. Persuaded that the phrase "remove from office" found in Section 177A means a permanent separation between the individual and the judicial office, we affirm.

¶3. Secondary is Thompson's claim that the proper procedures for removing him from the ballot were not followed, as neither the Mississippi Commission on Judicial Performance nor the Lee County Election Commission had authority to disqualify him. Because we hold that Thompson's removal was permanent, we need not address whether the proper procedures for removing him from the ballot were followed.

2

## FACTS AND PROCEDURAL HISTORY

¶4. Thompson is no stranger to the Court. While Thompson has served as justice court judge for District 4 of Lee County, the Court has addressed Thompson's misconduct on three separate occasions. First, in 2008, the Court held that Thompson had interjected himself into a criminal matter by attempting to prevent a warrant from being issued and executed upon a relative, and we ordered a public reprimand of Thompson for willful misconduct in office. ***Miss. Comm'n on Judicial Performance v. Thompson***, 972 So. 2d 582, 587, 590 (¶¶ 11, 23) (Miss. 2008), *overruled in part by **Miss. Comm'n on Judicial Performance v. Boone***, 60 So. 3d 172 (Miss. 2011). Then, in 2011, we held that Thompson "engaged in six counts of judicial misconduct prejudicial to the administration of justice which brought the judicial office into disrepute." ***Miss. Comm'n on Judicial Performance v. Thompson***, 80 So. 3d 86, 95 (¶ 40) (Miss. 2012). The Court ordered another public reprimand of Thompson, suspended him from office for thirty days, and fined him $2,000. ***Id.***

¶5. Most recently, the Court unanimously ordered Thompson's removal from office, explaining that Thompson had: (1) "lent the prestige of his office to assist the private interests of a friend;" (2) deprived a person "of her right to counsel of her choosing;" (3) kept "drug court-participants in the drug-court program longer than the statutorily permitted two years;" (4) "was not faithful to the law," and did not maintain competence in the law; (5) failed to "promote public confidence in the integrity of the judiciary;" (6) failed to exercise diligence and impartiality in the discharge of his administrative duties; (7) accepted participants "in the Lee County Justice Court Drug Court from other courts that did not have

3

drug courts" when explicitly directed not to do so; and (8) deprived "participants in drug court of their due-process rights" by signing orders of contempt "without the persons being properly notified of the charge of contempt or a right to a hearing and by conducting 'hearings' immediately after 'staffing meetings' without adequate time for the persons to have proper counsel or evidence presented." *Miss. Comm'n on Judicial Performance v. Thompson*, 169 So. 3d 857, 868-9 (¶ 41) (Miss. 2015). Our mandate requiring his removal from office issued on August 13, 2015.

¶6.    Interestingly, nine days prior to the issuance of our mandate, Thompson received fifty-five percent of the vote in the Lee County Democratic Party Primary for reelection to the position from which he was removed. Presented with the results from the primary election and our decision removing Thompson from office, the Lee County Democratic Party sought guidance from the Attorney General on how to proceed. The Attorney General directed that the Lee County Democratic Party place another person on the ballot, which it did – candidate Marcus Crump.

¶7.    Initially, Thompson filed a federal lawsuit seeking a temporary restraining order and preliminary injunction. *Thompson v. Attorney Gen. of Miss.*, 129 F. Supp. 3d 430 (S.D. Miss. 2015). The federal court held that Thompson had not demonstrated a "substantial likelihood on the merits of his claim" and denied his preliminary-injunction request. *Id.* at 431. Via a separate order, the district court dismissed Thompson's claim without prejudice, suggesting that he file his suit in state court.

4

¶8. Thompson filed a Motion for Temporary Restraining Order and Preliminary Injunction in the circuit court asking the circuit court to bar "the Democratic Executive Committee and Lee County Election Commission from printing general election ballots which [did] not contain . . . Thompson as the Democratic Party's [sic] for Lee County Justice Court Judge, District 4." He argued that Mississippi Code Section 9-19-17 unconstitutionally created an additional qualification to run for justice court judge, which violated Article 6, Section 171 of the Mississippi Constitution. He also argued that the Lee County Election Commission had violated his right to due process by failing to follow the proper statutory procedure for removing a person's name from the ballot based on his qualifications.

¶9. Following a hearing, the circuit court found that Article 6, Section 171, of the Mississippi Constitution "merely sets forth general qualifications that must be met and does not address removal from office." Further, Section 9-19-17 "is in compliance with and follows Miss. Const. art 6 § 177A." Finally, the circuit court determined that Thompson's due process rights of notice and hearing before his removal from the ballot were not violated by the Court's removal of Thompson from his position.

¶10. Thompson now appeals the circuit court's decision, and he raises the following two issues on appeal, which we recite verbatim:

I.    Thompson meets only the requirements for office of justice court judge specified by the Mississippi Constitution. Therefore, Thompson is eligible to serve as justice court judge. No statute can vary the qualification for office set in the state constitution.

II.   The procedures provided to remove Thompson from running for office were not followed. Thus, neither the Mississippi Commission on

5

Judicial Performance nor the Lee County Election Commission had the authority to disqualify Thompson.

**STANDARD OF REVIEW**

¶11.    "This Court applies a de novo standard of review when addressing a statute's constitutionality." ***Commonwealth Brands, Inc. v. Morgan***, 110 So. 3d 752, 758 (¶ 16) (Miss. 2013) (citing ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243 (¶ 3) (Miss. 2012)). We have explained further that, in reviewing the constitutionality of a statute, we keep in mind "(1) the strong presumption of constitutionality; (2) the challenging party's burden to prove the statute is unconstitutional beyond a reasonable doubt and (3) all doubts are resolved in favor of a statute's validity.  When interpreting a constitutional provision, we must enforce its plain language." ***Johnson*** 86 So. 3d at 243–44 (¶ 3).  Finally, "[q]uestions of law, such as statutory interpretation, are subject to a *de novo* standard of review." ***Tellus Operating Group, LLC v. Texas Petroleum Inv. Co.*** 105 So. 3d 274, 278 (¶ 9) (Miss. 2012) (citing ***Laurel Ford Lincoln-Mercury, Inc. v. Blakeney***, 81 So. 3d 1123, 1125 (¶ 5) (Miss. 2012)).

**ANALYSIS**

¶12.    Article 6, Section 177A of the Mississippi Constitution, wherein lie the powers of the Mississippi Supreme Court to discipline members of the judiciary, provides, in pertinent part, as follows:

> On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual

6

intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.

Miss. Const. art. 6, § 177A (1890). We must determine what the Constitution means by "remove from office." If, as the Attorney General contends, removal from office means permanent removal from the office, such that one may not return to it in the future, then there is no conflict between Mississippi Code Section 9-19-17 and the Constitution for the purpose of today's case.

¶13. The parties and the Court have failed to locate any Mississippi case that authoritatively addresses what Section 177A means by "remove from office," although, as discussed below, two superficially address the issue. In other words, we have no definitive answer as to whether removal from office is a temporary or a permanent separation from the office itself. However, the available secondary sources and persuasive authorities from other jurisdictions indicate that to be removed from office is, by definition, to be permanently separated from the office itself.

> Suspension and removal are two different judicial sanctions. Suspension does not prohibit a judge from seeking reelection, but removal does. Suspension lasts for a specific term of days, be it 30 days or the remaining days of a judge's term; removal is permanent because it entails not only removal from office but also prohibits the removed judge from again holding judicial office.

48 C.J.S. *Judges* § 141 (2016).

¶14. In ***Proctor v. Daniels***, 2010 Ark. 206, 392 S.W.3d 360 (2010), the Arkansas Supreme Court considered a case very much like the one *sub judice*. There, a former circuit judge who

had been removed from office filed to run as a write-in candidate for the same office from which the Arkansas Supreme Court had removed him. *Id.* at 361. After filing to run, the former circuit judge, Proctor, filed a pre-election challenge and sought to have Arkansas Code Section 16-10-410(d) declared unconstitutional. Like Mississippi Code Section 9-19-13, the Arkansas statute prohibited any judge removed from office from thereafter being appointed or elected to serve as a judge. *Id.* For reasons that need not be addressed here, the Arkansas Supreme Court found the statute to be unconstitutional because the statute impermissibly added to the constitutional qualifications of a judge. *Id.* at 363. However, the Arkansas Supreme Court, relying on the language quoted from *Corpus Juris Secundum* above, held that the option of removal from office found in the judicial-performance section of the Arkansas Constitution necessarily means permanent removal. *Id.* at 364.

¶15. We find ourselves persuaded by the Arkansas Court's reasoning as to the meaning of the pivotal phrase "remove from office." The office exists independently of the individual who, for however long, may fill it. In almost every circumstance, the office in question existed before the person came to hold it, and it continues to exist, held by another, after the individual leaves it. Thompson argues that the ***Proctor*** Court misinterpreted the Arkansas Constitution because "[t]o remove from office is to remove from the office one currently holds." We disagree with Thompson's necessary implication that the office in question ceases upon the departure of the individual filling it and becomes a new office upon the arrival of the subsequent officeholder. When, *e.g.*, a chancery judge enters an order enjoining certain behavior by a party, the order remains in effect after the individual judge

8

leaves office because it is a function not of the individual, but of the office. *Cf.* **Love v. Barnett**, 611 So. 2d 205, 207-208 (Miss. 1992) (discussing the effect of first chancellor's oral ruling when chancellor who succeeded him in presiding over the case entered a written judgment that differed from the first chancellor's oral ruling).

¶16.    Although in **Kentucky Judicial Conduct Commission v. Woods**, 25 S.W.3d 470, 474 (Ky. 2000), the Court wrote that the question of whether ineligibility to hold office after the expiration of the term during which a judge is removed was not before it, the Court's writing on the difference between removal and suspension supports the result urged by the Attorney General in today's case. The **Woods** Court wrote as follows:

> Section 121 of the Constitution of Kentucky gives the Judicial Conduct Commission the authority to take three different types of actions with regard to judicial misconduct or unfitness for office. A judge may be retired for disability, suspended without pay, or removed for good cause. Although the Constitution does not define removal, the concept is not arcane and is addressed in the Sixth Edition of Black's Law Dictionary. Therein, "Removal from office" is defined as follows:
>
>> Deprivation of office by act of competent superior officer acting within scope of authority. "Suspension" is the temporary forced removal from the exercise of office; "removal" is the dismissal from office.
>
> The Fourth Revised Edition of Black's provides, similarly, that "suspension" is "[a]n interim stoppage or arrest of official power and pay;—not synonymous with 'removal' which terminates wholly the incumbency of the office or employment." *These definitions make clear that removal is not merely a stigma placed upon a judge as Woods maintains, but the complete disqualification from serving in the office from which the judge was removed.*

**Woods**, 25 S.W.3d at 473. The Court later added, "It would be absurd to hold that the Commission could suspend without pay for some significant period of time, but that the more

9

severe measure of removal for good cause permits immediate resumption of judicial office."
*Id.* at 473-74.

¶17.    The *Proctor* and *Woods* Courts' interpretation of the dichotomy between removal and suspension also jibes well with our earlier writings in *In re Anderson*, 451 So. 2d 232 (Miss. 1984), and *In re Maples*, 611 So. 2d 211 (Miss. 1992). In *Anderson*, the Court considered a complaint against a justice court judge. The *Anderson* Court rendered its opinion removing him from office, explaining, "Even though Justice Court Judge William Anderson *may not now be* in public office, this opinion and order *effectively disqualify him from offering for a judicial public office again*, and the question [of his removal] is not moot." *Anderson*, 451 So. 2d at 234 n.2 (emphasis added). The only explanation for the quoted language is that, in the minds of the eight participating justices, all of whom concurred, the sanction of removal from office did more than require the offending justice court judge temporarily to vacate his post. In *Maples*, the Court accepted an agreed recommendation that the judge in question would "not serve in a judicial office, file to run for future judicial office, or file a certificate with the Supreme Court for designation as a senior Judge." *Maples*, 611 So. 2d at 1992. The unanimous *Maples* Court clearly understood that it had authority under Section 177A to enter the order prohibiting Judge Maples from holding judicial office in the future and power to enforce its order going forward. It wrote:

> Any violation of this Agreed Statement of Facts shall constitute a violation of the Court's order and shall result in the Mississippi Supreme Court entering an Order of Removal from judicial office with all the consequences provided by Section 177A of the Mississippi Constitution of 1890 and the laws of Mississippi.

10

*Id.* at 211-212. The above-quoted language evidences a clear expectation that Maples's removal from office would be permanent and, should he violate the Court's order removing him by attempting to return to office in the future, he again would be removed.

¶18. Thompson cites ***Gelch v. State Board of Elections***, 482 A.2d 1204 (R.I. 1983), in which the Supreme Court of Rhode Island reached a different conclusion. The case is inapposite because the pivotal issue here, whether the removal from office of a judge by a court is permanent, was not discussed or at issue in ***Gelch***. In ***Gelch***, a mayor of Providence, Rhode Island, resigned after he was convicted of a felony. *Id.* at 1206. During the time remaining on the very term from which he had resigned, the former mayor sought reelection in the special election held to fill the vacancy. *Id.* An opponent, Gelch, sought to keep the former mayor's name off of the ballot. *Id.* Gelch did not argue that the former mayor's resignation resulted in a permanent ban from the office; instead, he argued merely that he could not be re-elected during the time remaining on the term from which he had resigned. *Id.* at 1206-07. Nowhere in its opinion did the ***Gelch*** Court have to interpret the effect of removal from office as a sanction.

¶19. Thompson also cites the 1916 Tennessee Supreme Court case of ***State v. Crump***, 134 Tenn. 121, 183 S.W. 505 (1916), wherein the Tennessee Court held that Tennessee's then-existing Ouster Statute operated to remove offending officials from office only for the remainder of their terms. In ***Crump***, several Memphis officials were removed from office pursuant to the Ouster Act. *Id.* at 506. Two of the officials, Crump and Utley, already had been re-elected to their offices of mayor and vice-mayor prior to the order removing them

11

from office. *Id.* Crump and Utley contended that their new terms were not affected by their removal from office. *Id.* In reaching its holding, the *Crump* court first noted the language of the statute, which read, "That if the defendant shall be found guilty, judgment of ouster shall be rendered against him, and he shall be ousted from his office." *Id.* at 507. Then in language that indeed supports Thompson's argument, the Court continued, "There is no provision whatever in the act attaching to a judgment of ouster any disqualification on the part of the ousted official to hold any other office in the state or to hold the same office thereafter." *Id.* The *Crump* Court reasoned that Crump and Utley, when ousted in 1915, possessed no interest in their offices for the 1916-1920 terms from whence they could be ousted in 1915. *Id.*

¶20. Contrary to *Crump*, in *In re Johnson*, 689 So. 2d 1313 (La. 1997), the Supreme Court of Louisiana held that its order removing a judge from office operated to preclude him from serving both the term during which he was removed *and* the following term to which he had in the interim been reelected. The authorities that hold or indicate that removal from office is permanent present more persuasive views than those cited by Thompson. Of all of the sanctions allowed by Section 177A, we consider removal from office "the most severe discipline a judge can receive for misconduct." *Miss. Comm'n on Judicial Performance v. Osborne*, 876 So. 2d 324, 333 (¶ 26) (Miss. 2004). One instinctively thinks of permanent removal as more severe than a temporary suspension. The structure of Section 177A supports the conclusion that removal from office is harsher than a suspension. It reads, in pertinent part, "[T]he Supreme Court may remove from office, suspend, fine or publicly

12

censure or reprimand" offending judges. Miss. Const. art. 6, § 177A. The offenses appear to be listed in descending order of severity.

¶21. For the foregoing reasons, we hold that the phrase "remove from office" found in Section 177A of the Mississippi Constitution necessarily means a permanent separation from office, such that an individual judge removed from office remains ineligible to return to it. As a necessary extension, there is no removal from office that is not permanent. A removal from office that is not permanent is a suspension.

¶22. As the removal contemplated by Section 177A is permanent, we will not address Section 9-19-17 or the argument that it creates an unconstitutional qualification for serving as a justice court judge. As Section 177A provides for the permanent removal of Thompson from the office of justice court judge, one cannot claim that the similar effect of the statute contradicts Mississippi's Constitution.

**CONCLUSION**

¶23. Because, under Section 177A, removal from office means a permanent separation between the individual and the office in question, the Lee County Democratic Party was correct in nominating another candidate for Thompson's justice court judge post. The Circuit Court of Hinds County correctly denied Thompson's requested relief. We affirm.

¶24. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KING, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J. CHAMBERLIN, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

13

¶25.   Because I would hold that Ricky W. Thompson was not prohibited from running for the next term of office of Justice Court Judge for District 4 in Lee County by virtue of his having been removed from a previous term of that office by this Court, I respectfully dissent.

¶26.   The majority takes the position that "the phrase 'remove from office' found in [Article 6,] Section 177A[,] of the Mississippi Constitution necessarily means a permanent separation from office, such that an individual judge removed from office remains ineligible to return to it." Maj. Op. ¶ 21. Article 6, Section 177A, reads, in pertinent part, as follows:

> On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.

Miss. Const. art. 6, § 177A.

¶27.   The majority relies, in part, on *Proctor v. Daniels*, 392 S.W.3d 360 (Ark. 2010). There, the Arkansas Supreme Court considered "whether, pursuant to the Arkansas Constitution, a judge removed from office . . . may thereafter seek judicial office." *Proctor*, 392 S.W.3d at 363. After examining the Arkansas Constitution,[1] the Arkansas Supreme Court found that

---

[1] Amendment 66(c) of the Arkansas Constitution states, in pertinent part, that:

> If, after notice and hearing, the Commission by majority vote of the membership determines that grounds exist for the discipline of a judge or justice, it may reprimand or censure the judge or justice, who may appeal to the Supreme Court. The Commission may, if it determines that grounds exist, after notice and hearing, and by majority vote of the membership, recommend

14

the phrase "remove from office" contemplated permanency. *Id*. In doing so, it determined that:

> "Suspension" and "removal" are different sanctions. Suspension does not prohibit a judge from seeking reelection, but removal does. Suspension lasts for a specific term or days, be it thirty days or the remaining days of a judge's term . . . . Removal is permanent because it entails not only removal from office, but also a sanction prohibiting the removed judge from again holding judicial office. This sanction is imposed to protect the integrity of the judiciary and to respect and maintain the public trust. Because Proctor was removed from office, he is precluded from seeking election to a judicial office.

*Id*. at 364 (internal citations omitted).

¶28.    The majority relies, also, on ***Kentucky Judicial Conduct Commission v. Woods***, 25 S.W.3d 470 (Ky. 2000). There, a Kentucky district court judge attempted to run in a special election to fill the unexpired term of the same office from which he recently had been removed. *Id*. at 471. The task of the Kentucky Supreme Court was to "determine the minimum duration pursuant to KY. CONST. § 121 of the removal from judicial office."[2] *Id*. The Kentucky Supreme Court considered the Sixth Edition of Black's Law Dictionary, which defined "[r]emoval from office" as "[d]eprivation of office by act of competent superior

---

> to the Supreme Court that a judge or justice be suspended, with or without pay, or be removed, and the Supreme Court, en banc, may take such action.

Ark. Const. amend. LXVI(c).

[2] Section 121 of the Kentucky Constitution provides, in pertinent part, that:

> Subject to rules of procedure to be established by the Supreme Court, and after notice and hearing, any justice of the Supreme Court or judge of the Court of Appeals, Circuit Court or District Court may be retired for disability or suspended without pay or removed for good cause . . . .

Ky. Const. § 121.

officer acting within scope of authority." *Id.* at 473. The court continued, citing Black's: "'Suspension' is the temporary forced removal from the exercise of office; 'removal' is the dismissal from office." *Id*. at 473. The Kentucky court determined that the "definitions make clear that removal is not merely a stigma placed upon a judge . . . but the complete disqualification from serving in the office from which the judge was removed." *Id*. The court held that the judge was "prohibited from seeking or holding any other judicial office *during said term*." *Id.* at 474 (emphasis added).

¶29.　The majority also refers to a Louisiana Supreme Court case, *In re Johnson*, 689 So. 2d 1313 (La. 1997). On November 25, 1996, the Supreme Court of Louisiana removed Judge Michael Johnson from office as a district court judge.[3] *Id*. at 1313. The decision removing Johnson from office took effect when the court denied rehearing on December 13, 1996. *Id*. But in September of 1996, a few months before the Louisiana Supreme Court's decision took effect, Johnson won reelection for a second term to the same district court seat. *Id*. The court considered the following issue: "whether [the] court's judgment of November 25, 1996[,] removing Judge Michael Johnson from office prevent[ed] him from assuming a new term of

_____

[3] The Louisiana Constitution provides, in pertinent part, that:

> On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.

La. Const. Ann. art. V, § 25(C).

office commencing January 1, 1997." *Id*. The Louisiana Supreme Court concluded Johnson was ineligible for the second term. *Id*.

¶30.    Johnson argued that the November 25, 1996, order removing him from his first term "did not prevent him from assuming a second term in office." *Id*. The Louisiana Supreme Court disagreed, stating that, because the court previously had concluded that Johnson's conduct warranted "the most severe discipline," the court's prior order was "at odds with [Johnson's] interpretation that he should be removed from office for the approximate one month period remaining on his first term." *Id*. at 1313-14. The Louisiana Supreme Court ultimately ruled that its order of November 25, 1996, removed Johnson "from office for the term he was serving at the time the judgment was rendered and any subsequent term to which he was elected while the case was pending in this court." *Id*. at 1314. At the conclusion of its opinion, the ***Johnson*** court adopted a Supreme Court rule that governed the issue of Johnson's eligibility for any future elections.[4] *Id*. at n.2.

¶31.    While the facts of these out-of-state cases bear some resemblance to the present case, and the applicable laws of those states are similar to Mississippi's, they do not compel the conclusion reached by the majority and, of course, are not binding on this Court. The Kentucky Supreme Court disqualified a judge from seeking the position from which he was removed but did so only during the unexpired portion of the judge's term. ***Woods***, 25 S.W.3d

---

[4] Though no specific citation appears in the court's opinion, Section 26 of Louisiana Supreme Court Rule 23 provides that "[a]ny former judge who has been removed from office by the Supreme Court pursuant to La. Const. Art. V, § 25(C) cannot and is prohibited from qualifying to become a candidate for any judicial office until certified eligible by this Court." La. Sup. Ct. R. 23, § 26.

17

at 474 (holding that judge was "prohibited from seeking or holding any other judicial office *during said term*") (emphasis added). And the Louisiana Supreme Court removed a judge, who had won reelection for a second term to the same district court seat, "from office for the term he was serving at the time the judgment was rendered and any subsequent term to which he was elected while the case was pending in this court," pursuant to a Louisiana Supreme Court Rule which prohibited the judge's qualifying for any judicial office "until certified eligible by this Court." *In re Johnson*, 689 So. 2d at 1314; La. Sup. Ct. R. 23, § 26.

¶32.    By contrast, in *Gelch v. State Board of Elections*, 482 A.2d 1204, 1206 (R.I. 1984), a Rhode Island mayor was convicted of a felony and resigned from office. Thereafter, the mayor sought to become a candidate "for the special election to fill the unexpired term from which he resigned." *Id*. The Supreme Court of Rhode Island determined that when an office is forfeited, it is forfeited "for the remainder of the current term." *Id*. at 1211. But the Rhode Island Supreme Court went on to observe:

> Generally, "a removal from office bars the removed officer from an election or appointment to fill the vacancy for the unexpired term, but . . . it does not disqualify him to take some other office or to be elected or appointed to a new term of the same office." *Recall Bennett Committee v. Bennett*, 196 Or. 299, 326, 249 P.2d 479, 492 (1952). "The remainder of the existing term is, including its incidents and rights, . . . all the removal can act on or affect." *Thompson v. Crump*, 134 Tenn. 121, 132-33, 183 S.W. 505, 508 (1915).

*Id*. (emphasis added). Based on this decision, Thompson argues that "[o]ne cannot be removed from an office (a justice court term in the future) that one has never held." *See also People ex rel. Bagshaw v. Thompson*, 130 P.2d 237, 241 (Cal. App. 1942) ("One term of an office is separate and distinct from other terms of the same office"); *State v. Crump*, 134

Tenn. 121, 183 S.W. 505, 507 (1916) ("A removal from office extends to the limit of the current term, but such removal, unless a statute give it greater effect, cannot go beyond the current term because the office itself is limited by the term. If we go beyond the current term, then we have to deal with another office.").

¶33.    The majority also relies on two cases from this Court. In *In re William Anderson*, 451 So. 2d 232, 234 n.2 (Miss. 1984), this Court observed in a footnote that "[e]ven though Justice Court Judge William Anderson may not now be in public office, this opinion and order effectively disqualify him from offering for a judicial public office again, and the question [of William Anderson's removal from office] is not moot." The majority states that "[t]he only explanation for the quoted language is that, in the minds of the eight participating justices, all of whom concurred, the sanction of removal from office did more than require the offending justice court judge temporarily to vacate his post." Maj. Op. ¶ 17. But the question of ineligibility for judicial office in the future was not before the Court in that case; rather, William Anderson had argued that the fact that he no longer held office rendered his removal from office moot. *Id.* at 234 n.2.

¶34.    The majority refers also to *In re Maples*, 611 So. 2d 211, 211 (Miss. 1992) in which a circuit judge resigned and agreed "that he will not serve in a judicial office, file to run for judicial office, or file a certificate with the Supreme Court for designation as a senior Judge."

¶35.    I would hold that removal from judicial office only disqualifies the removed person from seeking to fill the unexpired term from which he or she was removed. *See Gelch*, 482

19

A.2d at 1211. This approach is not inconsistent with that of our sister states, Kentucky and Louisiana.

¶36.    Having reasoned that "removal from office" under the Mississippi Constitution contemplates only the term of office from which the judicial officer was removed, I consider next Thompson's argument that Mississippi Code Section 9-19-17 creates an additional qualification to run for judicial office, namely, that the person offering himself or herself for election not have been removed from judicial office.

¶37.    Section 9-19-17 provides that:

> A justice or judge removed by the supreme court or the seven-member tribunal is ineligible for judicial office, and pending further order of the court, may be suspended from practicing law in this state.

Miss. Code Ann. § 9-19-17 (Rev. 2014). Article 6, Section 171, of the Mississippi Constitution provides, in pertinent part, that:

> A competent number of justice court judges and constables shall be chosen in each county in the manner provided by law, but not less than two (2) such judges in any county, who shall hold their office for the term of four (4) years. Each justice court judge shall have resided two (2) years in the county next preceding his selection and shall be [sic] high school graduate or have a general equivalency diploma unless he shall have served as a justice of the peace or been elected to the office of justice of the peace prior to January 1, 1976. All persons elected to the office of justice of the peace in November, 1975, shall take office in January, 1976, as justice court judges.

Miss. Const. art. 6, § 171.

¶38.    Based on this section of our state Constitution, Thompson argues there are but two constitutional requirements to become a justice court judge: (1) reside in the county for two years preceding the election and (2) have a high school diploma or GED. Thompson insists

20

that Code Section 9-19-17 adds another requirement: that the candidate not have been removed from office. Because a statute cannot alter the Constitution, Thompson argues that Section 9-19-17 is unconstitutional. *See Saxon v. Harvey*, 223 So. 2d 620, 624 (Miss. 1969) ("While the legislature generally has the power to enact any law it sees fit, nevertheless, it is restricted in its enactment of laws by the provisions of our State Constitution and cannot by statutory enactment alter or nullify a clear, unambiguous mandate of the Constitution. Such a statute would be unconstitutional.").

¶39.    The Attorney General, Lee County Election Commission, and Lee County Democratic Party Executive Committee, on the other hand, argue that this case does not involve Article 6, Section 171, of the Mississippi Constitution; Section 9-19-17, they contend, simply codifies Article 6, Section 177A, of the Mississippi Constitution. Under the Attorney General's interpretation, Section 9-19-17's "statement that a judge's removal renders the judge 'ineligible' for future office is nothing more than a restatement that removal by the Supreme Court for misconduct under Article 6, Section 177A[,] is permanent." The Attorney General insists that there is a fundamental difference between the qualifications a candidate must meet to be elected as justice court judge, which are governed by Article 6, Section 171, and the sanction of removal, which is governed by Article 6, Section 177A.

¶40.    The Attorney General cites this Court's decision in *In re Lloyd W. Anderson*, 412 So. 2d 743 (Miss. 1982). In *Lloyd W. Anderson*, the Mississippi Commission on Judicial Performance recommended that this Court remove Justice Court Judge Lloyd W. Anderson from office. *Lloyd W. Anderson*, 412 So. 2d at 743-44. Ultimately, this Court agreed with

21

the Commission and removed Anderson from office. *Id*. at 748. While analyzing the history

of Constitution Section 177A, we said:

> [t]he provisions of Section 177A have been implemented by legislative enactments providing for a commission on judicial performance, the terms of office of its members, authority as to procedures before it, and its administration. Miss. Laws, ch. 511 (1979); Miss. Laws, ch. 385 (1980) (codified at Mississippi Code Annotated § 9-19-1 *et seq.* (Supp.1981)).

*Id*. at 744. And in the next sentence, this Court quoted Section 9-19-17's language that "[a]

justice or judge removed by the supreme court . . . is ineligible for judicial office." *Id*. *See*

*also* ***In Re Stewart***, 490 So. 2d 882, 883 (Miss. 1986) (observing that Article 6, Section

177A, is implemented by Mississippi Code Section 9-19-1 *et seq.* and specifically quoting

Section 9-19-17). Based on this language, the Attorney General argues that Article 6, Section

177A, of the Constitution and Mississippi Code Section 9-19-17 work in harmony, and that

removal under both is permanent.

¶41.     In response, Thompson argues that the Attorney General's argument is flawed because

"Mississippi Constitution Section 9-19-17 is different from those statutes which merely

provide "terms of office of [the Commission's] members, authority as to procedures before

[the Commission], and [the Commission's] administration." Thompson insists instead that

Section 9-19-17 creates an additional qualification for the office of justice court judge.

Further, Thompson asserts that the idea that removal from office is permanent is refuted by

the very enactment of Section 9-19-17, because, if the Constitution already granted this Court

the power to prohibit a removed judge from holding future office, Section 9-19-17 would be

superfluous.

22

¶42. In support of his position, Thompson cites this Court's decision in ***Montgomery v. Lowndes County Democratic Executive Committee***, 969 So. 2d 1, 2 (Miss. 2007), in which Monique Brooks Montgomery sought to qualify as a candidate for justice court judge. The Lowndes County Democratic Executive Committee refused to qualify Montgomery because, although she was a resident of the county, Montgomery did not reside in the subdistrict in which she sought to run. ***Id***. The Lowndes County Democratic Executive Committee based its disqualification on Mississippi Code Section 23-15-359(8) (Rev. 2001), which provided that "[t]he appropriate election commission shall determine whether each candidate is a qualified elector of the . . . county or county district they seek to serve." ***Id***. The trial court examined this statute in conjunction with Article 12, Section 250, of the Mississippi Constitution and determined that the legislature "intended that residency requirements in county districts apply to candidates for justice court judge."[5] ***Id***. Montgomery appealed, arguing that she satisfied the only constitutional requirements to run for justice court judge. ***Id***.

¶43. In the majority opinion, this Court noted that

> [t]he Constitution of 1890 creates a series of requirements for those wishing to qualify as candidates for the office of justice court judge. Along with

---

[5]Article 12, Section 250, of the Mississippi Constitution provides that:

[a]ll qualified electors and no other shall be eligible for office, except as otherwise provided in this Constitution; provided, however, that as to an office where no other qualification than that of being a qualified elector is provided by this Constitution, the Legislature may, by law, fix additional requirements for such office.

Miss. Const. art 12, § 250.

> providing a four-year term of office and placing educational requirements on those persons elected after 1976, the Constitution requires that "[e]ach justice court judge shall have resided two (2) years in the county next preceding his selection."

*Id*. (citing Miss. Const. art. 6, § 171). The majority recognized that Article 12, Section 250, of the Constitution allows the legislature to fix additional requirements for offices "where no other qualification than that of being a qualified elector is provided by [the Mississippi] Constitution." *Id.* at 3. Because Article 6, Section 171, did in fact create additional qualifications for justice court judges, we concluded that Article 12, Section 250, did not apply and that, as such, "[a] statute crafted by the Legislature may not provide for changes in the justice court judge section of the Constitution. Only an amendment may accomplish the task of altering the Constitution." *Id*. at 3 (citing *Saxon*, 223 So. 2d at 624).

¶44.    In *Wynn v. State*, 7 So. 353, 354 (Miss. 1890), this Court considered whether the legislature's decision to create an educational qualification for the office of county superintendent was permitted by the Constitution. Although this Court determined that such a qualification was "a just and proper condition of eligibility for office," it concluded the legislature's action violated the Constitution. *Id*. at 355. In doing so, this Court stated:

> It is thus seen that the only safe course is to deny the right of the legislature to add to any office created by the constitution any qualification for the incumbent not imposed by the constitution itself. As offices were created by it, and the subject of qualification dealt with, and special requirements made for certain offices, and general requirements as to all, it must be assumed that it prescribes all that was intended, and that *none can be added*, however appropriate they may be.

24

*Id*. (emphasis added). Thompson argues that, even though it may be "just and proper that a judge removed from office should never hold office again," the legislature still is without authority to add such qualification to the Constitution.

¶45.    Thompson next directs this Court's attention to its decision in ***Mississippi Commission on Judicial Performance v. Darby***, 143 So. 3d 564 (Miss. 2014). In ***Darby***, the Mississippi Commission on Judicial Performance and Judge Darby entered into an "Agreed Statement of Facts and Proposed Recommendation" which proposed that Darby be "removed from office, prohibited from holding judicial office in the future, and assessed costs of $200." ***Darby***, 143 So. 3d at 565. In considering the recommended sanction, this Court noted that:

> The jointly recommended sanction requires us to recognize the limits of our constitutionally vested powers in these matters. Included in the recommended sanctions, agreed to by Judge Darby, is that she be "prohibited from holding judicial office in the future. Our constitution does not *expressly* empower this Court to order such a prohibition."

*Id*. at 568 (emphasis added). The Court also inserted a footnote, stating:

> We ordered that the parties file supplemental briefs addressing this Court's authority to prohibit a judge from holding judicial office in the future. In its supplemental brief, the Commission acknowledged that this Court lacks the constitutional authority to impose such a sanction, but requested that we note that the Legislature has provided that a removed judge is "ineligible for judicial office." *See* Miss. Code Ann. § 9–19–17 (Rev. 2002).

*Id*. at n.7. Ultimately, this Court removed Judge Darby from office, but it did not explicitly prohibit Darby from seeking office in the future. *Id*. at 570.

¶46.    Presiding Justice Dickinson authored a special concurrence and observed that "[i]n explaining why the prohibition [that Judge Darby be precluded from seeking future judicial

25

office] is not included in the sanctions we order today, we pointed out that neither this Court nor the Commission . . . has authority to impose a sanction that prohibits a person from seeking and holding judicial office in the future." *Id*. at 571. Justice Dickinson also noted that "including [Section 9-19-17's] citation [in the footnote] . . . in no way adjudicates the constitutionality of the statute."

¶47.    In *Proctor*, 392 S.W.3d at 361-62, which the majority cites to support its argument that removal from office is permanent, the judge who previously had been removed challenged, as does Thompson in the present case, the constitutionality of Arkansas Code Section 16-10-410(d), arguing that the statute created an additional qualification for the office of circuit judge. That statute provided that "[a]ny judge removed from office [by the Arkansas Supreme Court] cannot be appointed or elected thereafter to serve as a judge." Ark. Code Ann. § 16-10-410(d) (Supp. 2009) (repealed by Acts of 2015, Act 939, § 2, eff. July 22, 2015).

¶48.    The Arkansas Secretary of State, the Pulaski County Election Commission, and the Arkansas Judicial Discipline and Disability Commission argued the restriction did not create an additional qualification; rather, they argued, it was an "individualized limitation on the ability to hold office as part of a constitutionally authorized sanction for judicial misconduct." *Proctor*, 392 S.W.3d at 363. The Arkansas Supreme Court was not convinced, finding that it did not "agree with appellees' contention that the statute is constitutional because it merely 'clarifies' a qualification already created by amendment 66 of the Arkansas Constitution." *Id*. Ultimately, the Arkansas Supreme Court found the statute unconstitutional

26

because it "encroache[d] on the power reserved to the judiciary to interpret the law" and created an additional qualification for office. *Id*.

¶49.    So, while the Arkansas Supreme Court determined that removal from office precluded a judge's seeking reelection in the future, it nevertheless ruled that the statute declaring removal to be permanent was unconstitutional because it added to the constitutional qualifications of a judge. Yet the majority in the present case declines to address Thompson's identical argument, finding that those arguments "need not be addressed." Maj. Op. ¶ 14.

¶50.    Section 9-19-17 alters Article 6, Section 171, of the Mississippi Constitution to require persons running for the office of justice court judge not to have been removed from judicial office. Consequently, I would hold that Section 9-19-17 is unconstitutional because the legislature "cannot by statutory enactment alter or nullify a clear, unambiguous mandate of the Constitution." *Saxon*, 223 So. 2d at 624; *Montgomery*, 969 So. 2d at 3. The Arkansas Supreme Court's analysis of the identical issue in *Proctor* is persuasive and, accordingly, Section 9-19-17 does more than simply implement the Constitution. It creates an additional qualification for those who run for justice court judge in Mississippi: that the judge shall not have been removed from judicial office. The legislature is without authority to add to the constitutional qualifications. *See Wynn*, 7 So. at 355.

**DICKINSON, P.J., JOINS THIS OPINION.**

27