**KENTUCKY JUDICIAL CONDUCT COMMISSION, Petitioner,**

v.

**William R. WOODS, Formerly a District Judge, of the Thirty–Seventh Judicial District, Respondent.**

No. 2000–SC–0607–OA.

Supreme Court of Kentucky.

Aug. 25, 2000.

George F. Rabe, Lexington, KY, James D. Lawson, Executive Secretary, Judicial Conduct Commission, Lexington, KY, for petitioner.

Philip D. McKenzie, Grayson, KY, for respondent.

**OPINION AND ORDER**

This cause comes before the Court on motion of the Judicial Conduct Commission[1] for an order declaring William R. Woods ineligible, by reason of his removal from the office of District Court Judge, to seek election to that office in the November 2000 special election to fill the unexpired term. From the facts, two issues emerge that we must address. First, we must decide whether this Court may consider the motion as an original action under Ky. Const. § 110(2)(a), and in the event this question is answered affirmatively, we must determine the minimum duration pursuant to Ky. Const. § 121 of the removal from judicial office.

On June 21, 2000, the Judicial Conduct Commission, acting pursuant to Ky. Const. § 121 and SCR 4.000, *et seq.*, entered a unanimous final order removing William R. Woods from the Office of District Court Judge of the Thirty-seventh Judicial District. The Commission determined that, among other things, Woods had verbally abused citizens who came before him as a judge and had similarly mistreated court personnel and other officials with whom he worked. The Commission also determined that he had openly displayed a handgun during a session of the Morgan District Court, and it concluded that during a two-week period after he had lost an election, Woods engaged in conduct that could only be described as "judicial tyranny." Thus, the Commission believed "the most severe discipline" was warranted.

It is unnecessary to more thoroughly review the evidence as Woods did not appeal from the order removing him from office. The Order of Removal is now final.

In July 2000, public statements were attributed to Woods to the effect that he

1. The Commission is a creature of Ky. Const. § 121 and is vested with authority to discipline judges for official misconduct.

intended to seek election in the November 2000 special election to the judicial office from which he had just been removed. On July 14, 2000, an original action was filed in this Court by the Judicial Conduct Commission seeking enforcement of its order of removal thereby prohibiting Woods from pursuing election to the unexpired term. Woods responded to the Commission's petition on July 25, 2000. On August 8, 2000, Woods filed as a candidate for the office of District Judge for the Thirty-seventh District.[2] On August 16, 2000, this Court heard oral argument on the Commission's motion. The Commission was represented by its counsel, George F. Rabe, and Woods was represented by his counsel, Philip D. McKenzie.

■ Woods asserts that the Judicial Conduct Commission lacks standing or authority to seek enforcement of the order of removal. The Commission responds that its constitutional power to remove a judge from office necessarily includes the authority to seek judicial enforcement of its orders, and that this Court may entertain such actions pursuant to KY. CONST. § 110(2)(a).

This Court has original jurisdiction pursuant to KY. CONST. § 110(2)(a) "as may be required to exercise control of the Court of Justice." While in most cases this Court's jurisdiction is appellate only, the Constitution recognizes that the highest court of our unified judicial system must be able to exercise necessary supervisory authority. This proposition was considered most recently in *Abernathy v. Nicholson,*[3] in which we compared Sections 110(2)(a) and 112(5) of the Constitution of Kentucky in deciding where an original action should be brought when no specific forum was identified. In response to the contention that we could exercise original jurisdiction under § 110(2)(a), we acknowledged:

> ... this Court possesses the raw power to entertain any case which fits generally within the rubric of its constitutional grant of authority. As Section 110(2)(a) of the Constitution contains a provision which grants the Supreme Court supervisory control of the Court of Justice, virtually any matter within that context would be subject to its jurisdiction.[4]

However, due to the breadth of § 110(2)(a) and its discretionary tone, we held the deciding factor in taking an original action under § 110(2)(a) is not whether this Court could exercise jurisdiction, but whether it *should*.[5] In the exercise of restraint, we concluded in *Abernathy* that § 110(2)(a) original actions should be entertained by this Court "only in well defined or compelling circumstances" and "generally only in cases where no other court has power to proceed."[6] This is just such a case.

■ The Supreme Court of Kentucky is the only court with the authority to affirm, modify, set aside, or remand orders of the Commission.[7] Thus, it follows that this Court is empowered to interpret and enforce those orders. Moreover, this is a classic situation where we *should* exercise original jurisdiction to maintain supervisory control of the Court of Justice. The Commission voted to remove Woods from office for egregious misconduct. Yet Woods now seeks to regain that same office without having sought judicial review of the Commission's order of removal.

2. At oral argument, Woods objected to the Commission's motion to supplement the record with a copy of his filing papers. Upon the belief that such filing papers are relevant in view of the claims and defenses, we have this day by separate order granted the Commission's motion to so supplement the record.

3. Ky., 899 S.W.2d 85 (1995).

4. *Id.* at 88.

5. *Id.* at 89.

6. *Id.* at p. 89. Former Chief Justice Stephens, joined by Justice Stumbo, thought we went too far. They believed that because the issue was administrative in nature, this Court had the inherent authority to exercise supervision.

7. KY. CONST. § 121; SCR 4.290.

Without our intervention, the traditional appellate process will have been circumvented, the Commission's authority undermined, and the orderly election process endangered. It is therefore incumbent upon this Court to render a final interpretation of the Commission's order.

■ Upon our determination that this Court may proceed, the decisive issue turns to the proper interpretation of the term "remove" as found in § 121 of the Constitution of Kentucky. Specifically, for what period of time, if any, does removal disqualify a former judge from holding judicial office? Woods contends that removal lacks any definite duration. Unlike suspension for a definite term, he believes removal is in the nature of a punishment amounting to a permanent stigma on the record of the removed judge. Thus, according to his argument, a removed judge is not precluded from immediately regaining the office from which he was removed, either for the same term or a succeeding term. In response, the Commission argues that removal means, at a minimum, disqualification for the remainder of the current term of office.

Section 121 of the Constitution of Kentucky gives the Judicial Conduct Commission the authority to take three different types of actions with regard to judicial misconduct or unfitness for office. A judge may be retired for disability, suspended without pay, or removed for good cause. Although the Constitution does not define removal, the concept is not arcane and is addressed in the Sixth Edition of Black's Law Dictionary. Therein, "Removal from office" is defined as follows:

> Deprivation of office by act of competent superior officer acting within scope of authority. "Suspension" is the temporary forced removal from the exercise of office; "removal" is the dismissal from office.

The Fourth Revised Edition of Black's provides, similarly, that "suspension" is "[a]n interim stoppage or arrest of official power and pay;—not synonymous with 'removal' which terminates wholly the incumbency of the office or employment." These definitions make clear that removal is not merely a stigma placed upon a judge as Woods maintains, but the complete disqualification from serving in the office from which the judge was removed. Moreover, it is not the role of the Commission to stigmatize or punish judges. The Commission's role is to improve the quality of justice by hearing specific complaints of judicial misconduct and taking the least severe action necessary to remedy the situation.[8]

A recent decision from the Supreme Court of Louisiana, *In re Johnson*,[9] supports the idea that removal from judicial office is for the remainder of the term, at a minimum. In *Johnson*, while the removal case was pending, the judge was re-elected for a term commencing after the removal judgment was to become final. The court held that the removal order applied to the term of office that the judge was serving at the time he was removed and to the subsequent term to which he was elected while the removal case was pending.

Returning to KY. CONST. § 121, we discover guidance as to the proper interpretation of removal in the structure of the provision. Undoubtedly, removal is a more severe sanction than suspension for a definite term without pay. We have characterized removal as a "more extreme penalty" than suspension[10] and the Commission, in its order of removal, concluded that "the most severe discipline is warranted in this case." It would be absurd to hold that the Commission could suspend without pay for some significant period of time, but that the more severe measure of

---

8. *Nicholson v. Judicial Retirement and Removal Commission*, Ky., 562 S.W.2d 306 (1978).

9. 689 So.2d 1313 (La.1997).

10. *Long v. Judicial Retirement and Removal Commission*, Ky., 610 S.W.2d 614, 615 (1980).

removal for good cause permits immediate resumption of judicial office.

Upon the authorities discussed hereinabove, and our analysis of the language and structure of § 121 of the Constitution of Kentucky, we have no doubt that the remedy of removal disqualifies a former judge from judicial office for at least the remainder of the current term. To hold otherwise would render removal less severe than suspension and possibly convert Woods' removal into a suspension of only a few months. The question of whether Woods' ineligibility for office should last longer than the remainder of the current district court judge's term is not now before the Court. The relief sought by the Commission was Woods' disqualification from serving in the office from which he was removed during the remainder of the term and that relief will be granted.

Accordingly, IT IS ORDERED that William R. Woods shall be and is hereby declared ineligible for election to the office of District Court Judge for the Thirty-seventh Judicial District in the November 7, 2000, election, and his name shall not be certified as a candidate for that office. Furthermore, William R. Woods is hereby prohibited from seeking the office of District Court Judge from the Thirty-seventh Judicial District by any means during the remainder of the current term of district court judges, and he is likewise prohibited from seeking or holding any other judicial office of the Kentucky Court of Justice during said term.[11]

COOPER, JOHNSTONE and STUMBO, JJ., concur.

KELLER, J., files a separate dissenting opinion in which GRAVES and WINTERSHEIMER, JJ., join.

GRAVES, J., files a separate dissenting opinion in which WINTERSHEIMER, J., joins.

11. KY. CONST. § 119.

1. *See* Majority opinion at 473 (citing Fourth

ENTERED: August 25, 2000.

/s/ Joseph E. Lambert
CHIEF JUSTICE

KELLER, Justice, dissenting.

I respectfully dissent because the majority opinion incorrectly holds that the authority to remove a judge from office encompasses the separate and distinct authority to disqualify a judge from holding future judicial office. While Kentucky Constitution § 121 grants the Kentucky Judicial Conduct Commission (hereinafter, "the Commission") the power to divest a judge of his or her office, the electorate of this Commonwealth has reserved only to the General Assembly the power to prohibit a former judge from holding future judicial office. The Commission removed Woods from office in its order of June 21, 2000, but neither the Commission nor this Court is empowered under the Constitution to prohibit Woods from entering the November 2000 special election and seeking the office he formerly held.

The majority's statement that this case requires the Court to "determine the minimum duration ... of the removal of a judicial official" betrays its failure to comprehend the nature of removal. Although the majority relies upon dictionary definitions which correctly describe the act of removal as "terminat[ing] wholly the incumbency of the office or employment,"[1] the majority's conclusion that such language clearly implies disqualification from future office conceptualizes removal as a state of being rather than an act which divests a judge from judicial office. Such a conceptualization is incoherent, and the conclusions drawn by the majority from this initial premise are similarly flawed.

Much of the majority's flawed reasoning stems from its conclusion that, because removal constitutes the ultimate disciplinary sanction, a judge removed from office must be prohibited from holding the office

Revised Black's Law Dictionary).

in order to ensure that removal is more serious than suspension and to preserve the heirarchy of potential disciplinary sanctions. The majority's view characterizes removal as a "meta-suspension" and overlooks the fact that removal is a more serious sanction than suspension because, after removal from office, an individual ceases to be a judge. The distinction is in the type of sanction rather than its duration:

> Suspension, retirement and removal all involve the separation of a person from whatever judicial authority or office he has.[7] ... *One may characterize an order which bars a person who is no longer a judge from holding judicial office in the future as a "suspension" (or, for that matter, as a "retirement" or "removal"), but such characterization is a strained meaning of those words.*
>
> [7]. *Removal is the means by which judges guilty of serious misconduct are divested of office.... Suspension is not a divestiture of office; it is merely a separation of the judge from his judicial powers and duties.*[2]

The removal of Woods from the office of district judge of the Thirty–Seventh Judicial District was accomplished and completed when the Commission ordered him removed from that office. This much cannot be disputed given the style of this case: Kentucky Judicial Conduct Commission v. William R. Woods, *formerly* a district judge of the Thirty-seventh Judicial District. Without question, the majority opinion prohibits Woods from holding judicial office in the future, even if the narrow holding of the opinion only prohibits him from seeking judicial office for the approximately two years remaining on his former term. It matters not that Woods was serving a four year term at the time of his removal. The Commission exercised the full extent of its power under the Kentucky Constitution when it ordered "that

Judge William R. Woods be, and hereby is, removed *from* office." Although the Commission now asks this Court to so interpret its order, the Commission did not, and could not, remove Woods *for a term* of office. If Woods were to be elected in the November 2000 special election, he would *become* district judge of the Thirty-seventh Judicial District—a future office regardless of the fact that he formerly held the office.

I would note, additionally, that the majority does not merely order Woods ineligible for the office of district judge of the Thirty-seventh Judicial District, but also orders him "likewise prohibited from seeking or holding any judicial office of the Kentucky Court of Justice during said term." Thus, in the event of a vacancy on the Circuit Court, Court of Appeals, or Supreme Court of Kentucky for which Woods would be eligible to run by virtue of his residency, the majority prohibits him from seeking any of these future offices.

It is undisputed that Kentucky Constitution § 121 grants the Commission the power to remove a judge from office:

> Subject to rules of procedure to be established by the Supreme Court, and after notice and hearing, *any justice of the Supreme Court or judge of the Court of Appeals, Circuit Court or District Court may be* retired for disability or suspended without pay or *removed for good cause by a commission....* [3]

In accordance with the Kentucky Constitution, this Court has adopted Supreme Court Rule 4.020, which authorizes the Commission:

> *To impose the sanctions* separately or collectively *of* (1) admonition, private reprimand, public reprimand or censure; (2) suspension without pay or *removal* or retirement *from judicial office, upon any judge of the Court of Justice or*

---

**2.** *In Re Probert,* 411 Mich. 210, 308 N.W.2d 773, 784 (1981) (Levin, J. dissenting) (bracketed footnote 7 from original).

**3.** Kentucky Constitution § 121 (emphasis added).

lawyer while a candidate for judicial office.... [4]

In contrast, however, Kentucky Constitution §§ 66, 67, and 68 grant impeachment power to the House of Representatives,[5] designate the Senate to conduct trials following impeachment,[6] and empower only the General Assembly to both remove civil officers from office *and disqualify them from holding future office:*

> The Governor and all civil officers shall be liable to impeachment for any misdemeanors in office; but *judgment in such cases shall not extend further than removal from office, and disqualifications to hold any office of honor, trust or profit under this Commonwealth;* but the party convicted shall, nevertheless, be subject and liable to indictment, trial and punishment by law.[7]

The General Assembly's power to impeach civil officers includes judges,[8] and the Judicial Article of the Kentucky Constitution, adopted by the electorate, expressly provides that "[t]he impeachment powers of the *general assembly* shall remain inviolate."[9]

Although this Court has previously required the Commission to act only within the authority enumerated within Kentucky Constitution § 121,[10] today's majority holds that the power to remove a judge from office necessarily includes the power to disqualify a judge from seeking future judicial office. The majority opinion contains *not one citation* to a case decided *in any jurisdiction* which reached this conclusion, and neither Kentucky Constitution § 121 nor Kentucky Constitution § 122, which outlines the eligibility requirements for justices and judges, contains any provision disqualifying a judge removed from office from holding future judicial office. I also find it significant that SCR 4.020, the rule this Court adopted to define the jurisdiction of the Commission, contains no language authorizing the Commission to disqualify a judge it has removed from seeking future judicial office. SCR 4.020 gives the Commission the authority to sanction a judge by "admonition, private reprimand, public reprimand or censure," [11] although those sanctions are not specifically mentioned in Kentucky Constitution § 121 because this Court determined that "the express grant of authority to retire, suspend or remove judges for good cause contained in Section 121 of the Kentucky Constitution includes by implication the authority to include the lesser sanctions set forth in [SCR 4.020]." [12] Although the majority today reaches a similar determination that disqualification is implied by removal, this Court obviously never believed this to be the case before today, or we simply would have written it into the rule.

---

**4.**   SCR 4.020(1)(b) (emphasis added).

**5.**   Kentucky Constitution § 66 ("The House of Representatives shall have the sole power of impeachment." *Id.*).

**6.**   Kentucky Constitution § 67 ("All impeachments shall be tried by the Senate.... No person shall be convicted without the concurrence of two-thirds of the Senators present." *Id.*).

**7.**   Kentucky Constitution § 68 (emphases added). This language mirrors the language of the United States Constitution, Art. 1, Sect. 3, Cl. 7 which establishes the parameters of impeachment power under the United States Constitution.

**8.**   *Commonwealth v. Tartar,* Ky., 239 S.W.2d 265, 267 (1951).

**9.**   Kentucky Constitution § 109 (emphasis added).

**10.**   *See Kentucky Bar Association v. Hardesty,* 775 S.W.2d 87 (1989) (Holding that Supreme Court Rule giving the Commission jurisdiction to impose upon judges additional sanctions relating to their right to practice law "is beyond the scope of Section 121 and is therefore unconstitutional." *Id.* at 87–88).

**11.**   SCR 4.020(1)(b).

**12.**   *Nicholson v. Judicial Retirement and Removal Commission,* Ky., 562 S.W.2d 306, 310 (1978).

A number of other states' constitutions,[13] statutory provisions,[14] and court rules[15] provide that a judge removed from office for disciplinary reasons may not seek future judicial office. If we accept the majority's conclusion that removal from office necessarily includes a period of disqualification, all of the constitutional provisions in other jurisdictions defining the effect of removal from judicial office are surplusage

**13.** *See, e.g.,* Penn. Const. Art. V, § 18(1) ("A justice, judge or justice of the peace ... removed from office under this section 18 shall forfeit automatically his judicial office and thereafter be eligible for judicial office." *Id.*); Cal. Const. Art. IV, § 18(d) ("A judge removed by the Supreme Court is ineligible for judicial office and pending further order is suspended from practicing law in this state." *Id.*); Tex. Const. Art. V § 1–a(6)(C) ("Under the law relating to the removal of an active Justice or Judge, the Commission and the review tribunal may prohibit a retired or former Judge from holding judicial office in the future or from sitting on a court of this State by assignment." *Id.*); Tex. Const. Art. V § 1–a(9) ("Upon ... an order for removal, the office in question shall become vacant. The review tribunal, in ... an order for removal, may prohibit such person from holding judicial office in the future." *Id.*); Wash. Const. Art. IV, § 31(5) ("The office of a judge or justice ... removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court." *Id.*); NYCLS Const Art VI, § 22(h) ("A judge or justice removed by the court of appeals shall be ineligible to hold other judicial office." *Id.*).

**14.** *See, e.g.,* Ark.Stat.Ann. § 16–10–410(d) (Arkansas statute providing "[a]ny judge removed from office pursuant to this subchapter cannot be appointed thereafter to serve as judge." *Id.*); O.C.G.A. § 15–1–13(a) (Georgia statute providing "[i]n addition to any other qualification for judicial office, if a person has been removed from any judicial office upon order of the Supreme Court after review, that person shall not be eligible to be elected or appointed to any judicial office in this state until seven years have elapsed from the time of such removal." *Id.*); Nev.Rev.Stat .Ann. §§ 2.020(1)(d), 3.060(1)(d), 4.010(1) (Nevada statutes providing that "[a] person shall not be a candidate for or be eligible to the office of" Supreme Court Justice, District Judge, or Justice of the Peace, respectively, "[i]f he has ever been removed from any judicial office by the legislature or removed or retired from any judicial office by the commission on judicial discipline."); Nev.Rev.Stat.Ann. § 1.4677 (Nevada statute providing that "[i]n *addition to or in lieu of removal* ... the commission may impose *other forms of discipline* ... including, but not limited to, requiring the justice or judge to: ... 9. Agree not to seek judicial office in the future." *Id.* (emphasis added)); N.D.Cent.Code, § 27–23–03(4) (North Dakota statute providing "A judge removed by the supreme court is ineligible for judicial office, and pending further order of the court, the judge is suspended from practicing law in this state." *Id.*); ORS § 1.430(3) (Oregon statute defining the effect of removal: "Upon an order for removal, the judge shall be removed from office and the salary of the judge shall cease and the office of the judge is vacant on the date of such order." *Id.*).

**15.** *See, e.g.,* LASTSCTR. XXIII Sect. 26:

Any former judge who has been removed from office by the Supreme Court pursuant to La. Const. Art. V., § 25(c) is not eligible to become a candidate for judicial office until certified by this court. After five years from the date of removal, a former judge may file a petition for reinstatement of eligibility to seek judicial office with the judiciary commission. The commission shall promptly review the petition and may hold a hearing and take evidence if necessary. Within thirty days of the filing of the petition, the commission shall file a written recommendation with this court as to whether the former judge's eligibility to seek judicial office should be reinstated. The court shall review the recommendation of the commission and issue an order granting or denying the former judge certification of eligibility to seek judicial office.

*Id. In re Johnson,* 689 So.2d 1313 (La.1997), cited in the majority opinion, ends with a footnote: "Judge Johnson's eligibility to be a candidate for future judicial election will be governed by court rule adopted this day." *Id.* at 1314 n. 2. The rule cited above is the rule referred to in the opinion, and it casts doubt on the majority's interpretation of that authority. The Louisiana Supreme Court held merely that Judge Johnson could be removed from office regardless of the number of terms which he was then authorized to serve, and the Court adopted this rule, pursuant to its authority under the Louisiana Constitution, to *supplement* its power to remove judges from office. Had the Louisiana Supreme Court not adopted such a rule, Johnson could have sought election to his former office, just as Woods is doing here. Not having such authority under the Kentucky Constitution, we have not adopted a similar rule.

which do no more than state the obvious. Such a conclusion defies common sense.

When the Michigan Judicial Tenure Commission asked the Supreme Court of Michigan to enjoin a former judge from holding judicial office in the future under a Michigan Constitutional provision tantamount to Kentucky Constitution § 110(2)(b), the Court declined to do so because it was "not expressly empowered to enter an injunction of the nature sought here." [16] A dissenter, who concurred with respect to the majority's decision to deny the injunctive relief, aptly characterized the situation facing this Court:

> Under § 30, this Court was granted the power, previously expressly reserved, to remove judges from office....
>
> *Several jurisdictions provide by constitution or statute that a judge who has been removed from office is thereafter disqualified from holding judicial office. Michigan has no such provision. In those jurisdictions, the electorate has expressed its judgment that one who has been removed from office should never again be invested with the public trust and has, in effect, given up its own power to re-elect such a person after removal. The Michigan electorate has expressed no similar sentiment....* [17]

In Kentucky, the electorate has spoken—and has conferred the authority to disqualify a civil official, including a judge, from holding future office *solely* upon the General Assembly.

The Commission exercised the authority granted it by the Constitution when it required Woods to surrender his robe and gavel by ordering him removed him from office. The majority's zeal to ensure that Woods does not again serve as a judge of the Court of Justice ignores the simple fact that the electorate of the Commonwealth has not given the Commission or this Court the power to do so. The major-

ity opinion appears to overlook the fact that the November 2000 special election for the office of district judge of the Thirty-seventh Judicial District is a contested race with an incumbent candidate, and Woods has no guarantee of victory. As tempting as it must be for this Court to embrace judicial activism and ignore the limitations of Kentucky Constitution § 121, we must allow the electorate in Carter, Elliott, and Morgan Counties to decide for themselves this November whether Woods should again be invested with the public trust involved in the office of district court judge.

GRAVES, WINTERSHEIMER, JJ., join this dissent.

GRAVES, Justice, dissenting.

I join the dissent of Justice Keller.

I write separately because the Judicial Conduct Commission lacks standing to bring an original action in this Court.

William R. Woods may be proven to be ineligible to assume the office of district judge; however, the law has not been followed in challenging his eligibility to be a candidate for election to that office. A qualified voter in the 37th Judicial District is the proper person to bring a legal challenge.

There is a specific statute for review of the qualifications of a candidate. KRS 118.176 provides for the bona fide challenge of a candidate:

> (2) The bona fides of any candidate seeking ... election in a ... general election may be questioned by any qualified voter entitled to vote for such candidate ... by summary proceedings consisting of a motion before the Circuit Court of the judicial circuit in which the candidate whose bona fides is questioned resides....

---

**16.** *In Re Probert, supra* note 2 at 774.

**17.** *Id.* at 790–792 (Levin, J. dissenting) (footnotes deleted and emphasis added).

The Order of Removal by the Judicial Conduct Commission may well be interpreted by the Circuit Court to be an impediment preventing Woods' being a candidate for judicial office prior to the expiration of the term for which he was elected, namely 2002.

Kentucky Constitution § 121 grants the Judicial Conduct Commission specific and limited powers to retire a judge for disability, suspend a judge without pay, or remove a judge for good cause. The Commission can go no further than removing a judge from office. The Judicial Conduct Commission lacks standing and authority to contest electoral eligibility. Woods has been removed from office and is no longer a judge. The Judicial Conduct Commission has no jurisdiction over his conduct or his participation in the current election. While William R. Woods is a candidate for judicial office, the Judicial Conduct Commission has jurisdiction only over any complaints about the ethics of his campaign conduct.

Woods has been removed from the Court of Justice. Kentucky Constitution § 110(2)(a) does not give the Supreme Court authority to govern Woods' conduct at this time because he is not a member of the Court of Justice.

This Court would have authority under Kentucky Constitution § 110(2)(a) to examine Woods' qualifications only if he is elected and seeks to assume the office of District Judge.

WINTERSHEIMER, J., joins in this dissent.