COLEMAN, JUSTICE, FOR THE COURT:
¶ 1. Former Justice Court Judge Rickey Thompson challenges the Lee County Democratic Executive Committee’s decision to withhold Thompson’s name from the general-election ballot for a new term as a justice court judge, based on the Court’s order removing him from the office of justice court judge prior to the election. Thompson sought relief from’ the Circuit Court of the First Judicial District of Hinds County;' however, the circuit court dismissed Thompson’s case, finding him ineligible for judicial office.
¶ 2. The primary question presented today is the following: When a justice court judge is removed from office, what shall be the duration of the prohibition against the removed person reentering the office in question? The parties offer two alternative answers.' The Attorney General contends that removal from office is permanent, and *1039 that, once removed from office, ■ a justice court judge may not return to it by reelection or otherwise. On the other hand, Judge Thompson takes the position that removal from office means-that the: judge in question must vacate the office but may later return to it. More accurately, that removal from office cannot disqualify one from holding the office again in the future, because Article' 6, Section 171 of the Mississippi Constitution does not list as a requirement for eligibility to serve that a candidate has never , been removed from office. Persuaded that the phrase “remove from office” found in Section 177A means a permanent separation between the individual and the judicial office, we affirm.
¶ 3. Secondary is Thompson’s claim that the proper procedures for removing him from the ballot were not followed, as neither the Mississippi Commission on Judicial Performance nor the Lee County Election Commission had authority to disqualify him. Because we hold that Thompson’s removal was permanent, we need not address whether the proper procedures for removing him from the ballot were followed.
FACTS AND PROCEDURAL HISTORY
¶4. Thompson is no stranger to the Court. While Thompson has served as justice court judge for District 4 of Lee Gounty, the Court has addressed Thompson’s misconduct on three separate occasions. First, in 2008, the Court held that Thompson had interjected himself into a criminal matter by attempting to prevent a warrant from being issued and executed upon a relative, and we ordered a public reprimand of Thompson for willful misconduct in. office. Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 587, 590. (¶¶ 11, 23) (Miss. 2008), overruled in part by Miss.Comm’n on Judicial Performance v. Boone, 60 So.3d 172 (Miss. 2011), Then, in 2011, we held that Thompson “engaged in six counts of judicial misconduct prejudicial to the administration of justice which brought the judicial office into disrepute.” Miss. Comm’n on Judicial Performance v. Thompson, 80 So.3d 86, 95 (¶ 40) (Miss. 2012). The Court ordered another public reprimand of Thompson, suspended him from office for thirty days, and fined him $2,000. Id.
¶ 5. Most recently, the Court unanimously ordered Thompson’s removal from office, explaining that Thompson had: (1) “lent the prestige of his office to assist'the private interests of a friend;” (2)- deprived a person “of her right to counsel of-her choosing;” (3) kept “drug court-participants in the drug-court program longer than the statutorily permitted two years;” (4) “was not faithful to-the law,” and did not- maintain competence in -the law; (5) failed to “promote public confidence in the integrity of the judiciary;” (6) failed to exercise diligence .and.-impartiality in the discharge of his administrative duties; (7) accepted participants “in the Lee County Justice Court Drug Court from ether courts that did not have drug courts” when explicitly directed, not to do so; and (8) deprived “participants in drug court of their due-process rights” by signing orders of contempt “without the persons being properly notified of the charge of contempt or a right to a hearing ajid .by conducting ‘hearings’ immediately after ‘staffing meetings’ without adequate time for the persons to have proper counsel or evidence presented.” Miss. Comm’n on Judicial Performance v. Thompson, 169 So.3d 857, 868-9 (¶ 41) (Miss. 2015); Our mandate requiring his removal from office issued on August 13, 2015.
¶ 6. Interestingly, nine days prior- to the issuance of our mandate, Thompson received fifty-five percent of the vote in the *1040 Lee County Democratic Party Primary for reelection to the position from which he was removed. Presented with the results from the primary election and our decision removing Thompson from office, the Lee County Democratic Party sought guidance from the Attorney General on how to proceed. The Attorney General directed that the Lee County Democratic Party place another person on the ballot, which it did—candidate Marcus Crump.
¶7. Initially, Thompson filed a federal lawsuit seeking a temporary restraining order and preliminary injunction. Thompson v. Attorney Gen. of Miss., 129 F.Supp.3d 430 (S.D. Miss. 2015). The federal court held that Thompson had not demonstrated a “substantial likelihood on the merits of his claim” and denied his preliminary-injunction request. Id. at 431. Via a separate, order, the district court dismissed Thompson’s claim without prejudice, suggesting that he file his suit in state court.
¶ 8. Thompson filed a Motion for Temporary Restraining Order and Preliminary Injunction in the circuit court asking the circuit court to bar “the Democratic Executive Committee and Lee County Election Commission from printing general election ballots which [did] not contain ... Thompson as the Democratic Party’s [sic] for Lee County Justice Court Judge, District 4.” He argued that Mississippi Code Section 9-19-17 unconstitutionally created an additional qualification to run for justice court judge, which violated Article 6, Section 171 of the Mississippi Constitution. He also argued that the Lee County Election Commission had violated his right to due process by failing to follow the proper statutory procedure for removing a person’s name from the ballot based on his qualifications.
¶ 9. Following a hearing, the circuit court found that Article 6, Section 171, of the Mississippi Constitution “merely sets forth general qualifications that must be met and does not address removal from office.” Further, Section 9-19-17 “is in compliance with and follows Miss. Const, art 6 § 177A.” Finally, the circuit court determined that Thompson’s due process rights of notice and hearing before his removal from the ballot were not violated by the Court’s removal of Thompson from his position.
¶ 10. Thompson now appeals the circuit court’s decision, and he raises the following two issues on appeal, which we recite verbatim:
I. Thompson meets only the requirements for office of justice court judge specified by the Mississippi Constitution. Therefore, Thompson is eligible to serve as justice court judge. No statute can vary the qualification for office set in the state constitution.
II. The procedures provided to remove Thompson from running for office were not followed. Thus, neither the Mississippi Commission on Judicial Performance nor the Lee County Election Commission had the authority to disqualify Thompson.
STANDARD OF REVIEW
¶ 11. “This Court applies a de novo standard of review when addressing a statute’s constitutionality.” Commonwealth Brands, Inc. v. Morgan, 110 So.3d 752, 758 (¶ 16) (Miss. 2013) (citing Johnson v. Sysco Food Servs., 86 So.3d 242, 243 (¶3) (Miss. 2012)). We have explained further that, in reviewing the constitutionality of a statute, we keep in mind “(1) the strong presumption of constitutionality; (2) the challenging party’s burden to prove the statute is unconstitutional beyond a reasonable doubt and (3) all doubts are resolved in *1041 favor of a statute’s validity. When interpreting a constitutional provision, we must enforce its plain language.” Johnson, 86 So.3d at 243-44 (¶ 3). Finally, “[questions of law, such as statutory interpretation, are subject to a de novo standard of review.” Tellus Operating Group, LLC v. Texas Petroleum Inv. Co. 105 So.3d 274, 278 (¶ 9) (Miss. 2012) (citing Laurel Ford Lincoln-Mercury, Inc. v. Blakeney, 81 So.3d 1123, 1125 (¶ 5) (Miss. 2012)).
ANALYSIS
¶ 12. Article 6, Section 177A of the Mississippi Constitution, wherein lie the powers of the Mississippi Supreme Court to discipline members of the judiciary, provides, in pertinent part, as follows:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const, art. 6, § 177A (1890). We must determine what the Constitution means by “remove from office.” If, as the Attorney General contends, removal from office means permanent removal from the office, such that one may not return to it in the future, then there is no conflict between Mississippi Code Section 9-19-17 and the Constitution for the purpose of today’s case.
¶ 13. The parties and the Court have failed to locate any Mississippi case that authoritatively addresses what Section 177A means by “remove from office,” although, as discussed below, two superficially address the issue. In other words, we have no definitive answer as to whether removal from office is a temporary or a permanent separation from the office itself. However, the available secondary sources and persuasive authorities from other jurisdictions indicate that to be removed from office is, by definition, to be permanently separated from the office itself.
Suspension and removal are two different judicial sanctions. Suspension does not prohibit a judge from seeking reelection, but removal does. Suspension lasts for a specific term of days, be it 30 days or the remaining days of a judge’s term; removal is permanent because it entails not only removal from office but also prohibits the removed judge from again holding judicial office.
48 C.J.S. Judges § 141 (2016).
¶ 14. In Proctor v. Daniels, 2010 Ark. 206, 392 S.W.3d 360 (2010), the Arkansas Supreme Court considered a case very much like the one sub judice. There, a former circuit judge who had been removed from office filed to run as a write-in candidate for the same office from which the Arkansas Supreme Court had removed him. Id. at 361. After filing to run, the former circuit judge, Proctor, filed a pre-election challenge and sought to have Arkansas Code Section 16-10-410(d) declared unconstitutional. Like Mississippi Code Section 9-19-13, the Arkansas statute prohibited any judge removed from office from thereafter being appointed or elected to serve as a judge. Id. For reasons that need not be addressed here, the Arkansas *1042 Supreme Court found the statute to be unconstitutional because the statute imper-missibly added to the constitutional qualifications of a judge. Id. at 363. However, the Arkansas Supreme Court, relying on the language quoted from Corpus Juris Se-cundum above, held that the option of removal from office found in the judicial-performance section of the Arkansas. Constitution necessarily means permanent- removal. Id. at 364.
¶-15. We find ourselvés persuaded by the Arkansas Court’s reasoning as to the meaning of the pivotal phrase “remove from office.” The office exists independently of the individual who, for however long, may fill it. In almost every circumstance, the office in question existed before the person came to hold it, and it continues to exist, held by another, after the. individual leaves it. Thompson argues that the Proctor- Court misinterpreted the Arkansas Constitution because.“[t]o remove from office is to remove from the office one currently holds.” We disagree with Thompson’s necessary implication that the office in question ceases upon the departure of the individual filling it and becomes a new office upon the arrival of the subsequent officeholder. When, e.g., a chancery judge enters an order enjoining certain behavior by a party, the. order remains in effect after the individual judge leaves office because it is a function not of the individual, but of the office. Cf. Love v. Barnett, 611 So.2d 206, 207-208 (Miss. 1992) (discussing the effect of first chancellor’s oral ruiing when chancellor who succeeded him in presiding over the case entered a written judgment that differed from the first chancellor’s oral ruling).
¶16. Although in Kentucky Judicial Conduct Commission v. Woods, 25 S.W.3d 470, 474 (Ky. 2000), the Court wrote that the question of whether ineligibility to hold office after the expiration of the term during which a judge is removed was not before it, the Court’s writing on the difference between removal and suspension supports the result urged by the Attorney General in today’s case. The Woods Court wrote as-follows:
Section 121 of the Constitution of Kentucky gives the Judicial Conduct Commission the authority to take three different types of actions with regard to judicial misconduct or unfitness for office. A judge may be retired for disability, suspended without pay, or removed for good cause. Although the Constitution does not define removal, the concept is not arcane and is addressed in the Sixth Edition of Black’s Law Dictionary. Therein, “Removal from office” is defined as follows:
Deprivation of office by act of competent superior officer acting within scope of authority. “Suspension” is the temporary forced removal from the exercise of office; “removal” is the dismissal from office.
The Fourth Revised Edition of Black’s provides, similarly, that “suspension” is “[a]n interim stoppage or arrest of official power and pay;—not synonymous with ‘removal’ which terminates wholly the incumbency of the office or employment.” These definitions make clear that removal is not merely- a stigma placed upon a-judge as Woods maintains, but the complete disqualification from serving in the office from which 'the judge was removed. . ' ' •
Woods, 25 S.W.3d at 473. The Court later added, “It would, be absurd to hold that the Commission could-suspend without pay for some significant period of time,, but that the more severe measure of removal for good cause permits immediate resumption of judicial office.” Id. at 473-74.
¶ 17. The Proctor and Woods Courts’ interpretation of the dichotomy between *1043 removal and suspension also jibes well with our earlier writings in In re Anderson, 451 So.2d 232 (Miss. 1984), and In re Maples, 611 So.2d 211 (Miss. 1992), In Anderson, the Court considered a complaint against a justice court judge. The Anderson Court , rendered its opinion removing him from office, explaining, “Even though Justice Court Judge William Anderson may not now be in public office, this opinion and order effectively disqualify him from offering for a judicial public office again, and the question [of his removal] is not moot.” Anderson, 451 So.2d at 234 n.2 (emphasis added). The only explanation for the quoted language is that, in the minds of the eight participating justices, all of whom concurred, the sanction of removal from office did more than require the offending justice court judge temporarily to vacate his post. In Maples, the Court accepted an agreed recommendation that the judge in question would “not serve in a judicial office, file to run for future judicial office, or file a certificate with the Supreme Court for designation as a senior Judge,” Maples, 611 So.2d at 211. The unanimous Maples Court clearly understood that it had authority under Section 177A to enter the order prohibiting Judge Maples from holding judicial office in the future and power to enforce its order going forward. It wrote:
Any violation of this Agreed Statement of Facts shall constitute a violation of the Court’s order and shall result in the Mississippi Supreme Court entering an Order of Removal from judicial office with all the consequences provided by Section 177Á of the Mississippi Constitution of 1890 and the laws of Mississippi.
Id. at 211-212. The above-quoted' language evidences a clear expectation that Maples’s removal from office would be permanent and, should he violate the Court’s order removing him by attempting-to return to office in the future, he again would be removed.
' ¶ 18. Thompson cites Gelch v. State Board of Elections, 482 A.2d 1204 (R.I. 1984), in which the Supreme Court of Rhode Island reached a different conclusion. The case is inapposite because the pivotal issue here, whether the removal from office of a judge by a court is permanent, was not discussed or at issue in Gelch. In Gelch, a mayor of Providence, Rhode Island, resigned after he was convicted of a felony. Id. at 1206. During the time remaining on the very term from which he had resigned, the former mayor sought reelection in the special election held to fill the vacancy. Id. An opponent, Gelch, sought to keep'the former mayor’s name off of the-ballot. Id. Gelch did not argue that the former mayor’s resignation resulted in a permanent ban from the office; instead, he argued merely that he could not be re-elected during the time remaining on the term from which he had resigned. Id. at 1206-07. Nowhere-in its opinion did the Gelch Court have to interpret the effect of removal from office as a sanction.
¶ 19. Thompson also cites the 1916 Tennessee Supreme Court case of State v. Crump, 134 Tenn. 121, 183 S.W. 505 (1916), wherein the Tennessee Court held that Tennessee’s then-existing Ouster Statute operated to remove offending officials from office only for the remainder of their terms. In Crump, several Memphis officials were removed from office pursuant to the Ouster Act. Id. at 506. Two of the officials, Crump and Utley, already had been re-elected to their offices of may- or and vice-mayor prior to the order removing them from office. Id. Crump and Utley contended that their new terms were not affected by their removal from office. Id, In reaching its holding, the Grump court first noted the language of *1044 the statute, which read, “That if the defendant shall be found guilty, judgment of ouster shall be rendered against him, and he shall be ousted from his office.” Id. at 507. Then in language that indeed supports Thompson’s argument, the Court continued, “There is no provision whatever in the act attaching to a judgment of ouster any disqualification on the part of the ousted official to hold any other office in the state or to hold the same office thereafter.” Id. The Crump Court reasoned that. Crump and Utley, when ousted in 1915, possessed no interest in their offices for the 1916-1920 terms from whence they could be ousted in 1915. Id.
¶ 20. Contrary to Crump, in In re Johnson, 689 So.2d 1313 (La. 1997), the Supreme Court of Louisiana held that its order removing a judge from office operated to preclude him from serving both the term during which he was removed and the following term to which he had in the interim been reelected. The authorities that hold or indicate that removal from office is permanent present more persuasive views than those cited by Thompson. Of all of the sanctions allowed by Section 177A, we consider removal from office “the most severe discipline a judge can receive for misconduct.” Miss. Comm’n on Judicial Performance v. Osborne, 876 So.2d 324, 333 (¶26) (Miss. 2004). One instinctively thinks of permanent removal, as more severe than a temporary suspension. The structure of Section 177A supports the conclusion that removal from office is harsher than a suspension. It reads, in pertinent part, “[T]he Supreme Court may remove from- office, suspend, fíne or publicly censure or reprimand” offending judges. Miss. Const, art. 6, § 177A, The offenses, appear to be listed in descending order of severity.
¶ 21. For the foregoing reasons, we hold that the phrase “remove from office” found in Section 177A of the Mississippi Constitution necessarily means a permanent separation from office, such that an individual judge removed from office remains ineligible to return to it. As a necessary extension, theré is no removal from office that is not permanent. A'removal from office that' is not permanent is a suspension.
¶22. As the removal contemplated by Section 177A is permanent, we will not address Section 9-19-17 or the argument that it creates an unconstitutional qualification for serving as a justice court judge. As Section 177A provides for the permanent removal of Thompson from the office of justice court judge, one cannot claim that the similar effect of the statute contradicts Mississippi’s Constitution.
CONCLUSION
¶23. Because, under Section 177A, removal from office means a permanent separation between the individual and the office in question, the Lee County Democratic Party was correct in nominating another candidate for Thompson’s- justice court judge post.- The Circuit Court of Hinds County correctly denied Thompson’s requested relief. We affirm.
¶ 24. AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., KING, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J. CHAMBERLIN, J., NOT PARTICIPATING.