KITCHENS, JUSTICE,
DISSENTING:
¶25/Because I would hold that Ricky W. Thompson was not prohibited from running for the next term of office of Justice Court Judge for District 4 in Lee *1045 County by virtue of his having been removed from a previous term of that office by this Court, I respectfully dissent.
¶26. The majority takes the position that “the phrase ‘remove from office’ found in [Article 6,] Section 177A[,] of the Mississippi Constitution necessarily means a permanent separation from office, such that an individual judge removed from office remains ineligible to return to it.” Maj. Op. ¶21. Article 6, Section 177A, reads, in pertinent part, as follows:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const, art. 6, § 177A.
¶27. The majority relies, in part, on Proctor v. Daniels, 392 S.W.3d 360 (Ark. 2010).There, the Arkansas Supreme Court considered “whether, pursuant to the Arkansas Constitution, a judge removed from office ... may thereafter seek judicial office.” Proctor, 392 S.W.3d at 363. After examining the Arkansas Constitution,[1] the Arkansas Supreme Court found .that the phrase “remove from office” contemplated permanency. Id. In doing so, it determined that:
“Suspension” and “removal” are different sanctions. Suspension does not prohibit a judge from seeking reelection, but removal does. Suspension lasts for a specific term or days, be it thirty days or the remaining days of a judge’s term .... Removal is permanent because it entails not only removal from office, but also a sanction prohibiting the removed judge from again holding judicial office. This sanction is imposed to protect the integrity of the judiciary and to respect and maintain the public trust. Because Proctor was removed from office, he is precluded from seeking election to a judicial office.
Id. at 364 (internal citations omitted).
¶ 28. The majority relies, also, on Kentucky Judicial Conduct Commission v. Woods, 25 S.W.3d 470 (Ky. 2000). There, a Kentucky district court judge attempted to run in a special election to fill the unexpired term of the same office from which he recently had been removed. Id. at 471. The task of the Kentucky Supreme Court was to “determine the minimum duration pursuant to KY. CONST. § 121 of the removal from judicial office.”[2] Id. The *1046 Kentucky Supreme .Court considered the Sixth Edition of Black’s Law Dictionary, which defined “[r]emoval from office” as “[deprivation of office by act of competent superior officer acting within scope of authority.” Id. at 473. The- court continued, citing Black’s: “ ‘Suspension’ is the temporary forced removal from the exercise of office; ‘removal’ is the dismissal from office.” Id. at 473. The Kentucky court determined that the “definitions make clear that removal is not merely a stigma placed upon a judge ... but the complete disqualification from serving in the office from which the judge was removed.” Id. The court held that the judge was “prohibited from seeking or holding any other judicial office during said term.” Id. at 474 (emphasis added).
¶ 29. The majority also refers to a Louisiana Supreme Court case, In re Johnson, 689 So.2d 1313 (La. 1997). On November 26, 1996, the Supreme Court of Louisiana removed Judge Michael Johnson from office as a district court judge.[3] Id. at 1313. The decision removing Johnson from office took effect when the court denied rehearing on December 13, 1996. Id. But in September of 1996, a few months before the Louisiana Supreme Court’s decision took effect, Johnson won reelection for a second term to the same district court seat. Id. The court considered the following issue: “whether [the] court’s judgment of November 25, 1996[,] removing. Judge Michael Johnson from office prevented] him from assuming a new term of office commencing January 1, 1997.” Id. The Louisiana Supreme Court concluded Johnson was ineligible for the second term. Id.
¶ 30. Johnson argued that the November 25,1996, order removing him from his first term “did not prevent him from assuming a second term in office.” Id. The Louisiana Supreme Court disagreed, stating that, because the court previously had concluded that Johnson’s conduct warranted “the most severe discipline,” the court’s prior order was “at odds with [Johnson’s] interpretation that he should be removed from office for the approximate one month period remaining on his first term.” Id. at 1313-14. The Louisiana Supreme Court ultimately ruled that its order of November 25,1996, removed Johnson “from office for the term he was serving at the time the judgment was rendered and any subsequent term to which he' was elected while the case was pending in this court.” Id. at 1314. At the conclusion of its opinion, the Johnson court adopted a Supreme Court rule that governed the issue of Johnson’s eligibility for any future elections.[4] Id. at n.2.
¶ 31. While the facts of these out-of-state cases bear some resemblance to the pres *1047 ent case, and the applicable laws of those states are similar to Mississippi’s, they do not compel the conclusion reached by the majority and, of course, are not binding on this Court. The Kentucky Supreme Court disqualified a judge from seeking the position from which he was removed but did so only during the unexpired portion of the judge’s term. Woods, 25 S.W.3d at 474 (holding that judge' was “prohibited from seeking or holding any other judicial office during said term”) (emphasis added). And the Louisiana Supreme Court removed a judge, who had won reelection for a second term to the same district court seat, “from office for the term he was serving at the time the judgment was rendered and any subsequent term to which he was elected while the case was pending in this court,” pursuant to a Louisiana Supreme Court Rule which prohibited the judge’s qualifying for any judicial office “until certified eligible by this Court.” In re Johnson, 689 So.2d at 1314; La. Sup. Ct. R. 23, § 26.
¶32. By contrast, in Gelch v. State Board of Elections, 482 A.2d 1204, 1206 (R.I. 1984), a Rhode . Island mayor was convicted of a felony and resigned from office. Thereafter, the mayor sought to become a candidate “for the special election to fill the unexpired term from which he resigned.” Id. The Supreme Court of Rhode Island determined that when an office is forfeited, it is forfeited “for the remainder of the current term.” Id. at 1211. But the Rhode .Island Supreme Court went on to observe:
Generally, “a removal from office bars the removed officer from an election or appointment to fill the vacancy: for the unexpired term, but .... it does not disqualify him to take some other office or to be elected or appointed to a new term of the same office.” Recall Bennett Committee v. Bennett, 196 Or. 299, 326, 249 P.2d 479, 492 (1952). “The remainder of the existing term is, including its incidents and rights, ... all the removal can act on or affect.” Thompson v. Crump, 134 Tenn: 121, 132-33, 183 S.W. 505, 508 (1916).
Id. (emphasis added). Based on this decision, Thompson argues that “[o]ne cannot be removed from an office (a justice court term in the future) that one has never held.” See also People ex rel. Bagshaw v. Thompson, 55 Cal.App.2d 147, 130 P.2d 237, 241 (1942) (“One term of an office is separate and distinct from other terms of the same office”); State v. Crump, 134 Tenn. 121, 183 S.W. 505, 507 (1916) (“A removal from office extends to the limit of the current term, but such removal, unless a statute give it greater effect, cannot go beyond the current term because the office itself is limited by the term. If we go beyond the current term, then we have to deal with another office.”).
¶33. The majority also relies on two cases from this Court. In In re William Anderson, 451 So.2d 232, 234 n.2 (Miss. 1984), this Court observed in a footnote that “[e]ven though Justice Court Judge William'Anderson may not now be in public office, this qpinion and order effectively disqualify him from offering for a judicial public office again, and the question [of William Anderson’s removal from office] is not moot.” The majority states that “[t]he only explanation for the quoted language is that, in the minds of the eight participating justices, all of whom concurred, the sánction of removal from office did more than require the offending justice court judge temporarily to vacate his post.” Maj. Op. ¶ 17. But the question of ineligibility for judicial office in the future was not before the Court in that case; rather, William Anderson had argued that the fact that he no longer held office rendered his removal from office moot. Id. at 234 n.2.
*1048 ¶ 34. The majority refers also to In re Maples, 611 So.2d 211, 211 (Miss. 1992) in which a circuit judge resigned and agreed “that he will not serve in a judicial office, file to run for judicial office, or file a certificate with the Supreme Court for designation as a senior Judge.”
¶35. I would hold that removal from judicial office only disqualifies the removed person from seeking to fill the unexpired term from which he or she was removed. See Gelch, 482 A.2d at 1211. This approach is not inconsistent with that of our sister states, Kentucky and Louisiana.
¶ 36. Having reasoned that “removal from office” under the Mississippi Constitution contemplates only the term of office from which the judicial officer was removed, I consider next Thompson’s argument that Mississippi Code Section 9-19-17 creates an additional qualification to run for judicial office, namely, that the person offering himself or herself for election not have been removed from judicial office.
¶ 37. Section 9-19-17 provides that:
A justice or judge removed by the supreme court or the seven-member tribunal is ineligible for judicial office, and pending further order of the court, may be suspended from practicing law in this state.
Miss. Code Ann. § 9-19-17 (Rev. 2014). Article 6, Section 171, of the Mississippi Constitution provides, in pertinent part, that:
A competent number of justice court judges and constables shall be chosen in each county in the manner provided by law, but not less than two (2) such judges in any county, who shall hold their office for the term of four (4) years. Each justice court judge shall have resided two (2) years in the county next preceding his selection and shall be [sic] high school graduate or have a general equivalency diploma unless he shall have served as a justice of the peace or been elected to the office of justice of the peace prior to January 1, 1976. All persons elected to the office of justice of the peace in November, 1975, shall take office in January, 1976, as justice court judges.
Miss. Const, art. 6, § 171.
¶ 38. Based on this section of our state Constitution, Thompson argues there are but two constitutional requirements to become a justice court judge: (1) reside in the county for two years preceding the election and (2) have a high school diploma or GED. Thompson insists that Code Section 9-19-17 adds another requirement: that the candidate not have been removed from office. Because a statute cannot alter the Constitution, Thompson argues that Section 9-19-17 is unconstitutional. See Saxon v. Harvey, 223 So.2d 620, 624 (Miss. 1969) (“While the legislature generally has the power to enact any law it sees fit, nevertheless, it is restricted in its enactment of laws by the provisions of our State Constitution and cannot by statutory enactment alter or nullify a clear, unambiguous mandate of the Constitution. Such a statute would be unconstitutional.”).
¶ 39. The Attorney General, Lee County Election Commission, and Lee County Democratic Party Executive Committee, on the other hand, argue that this case does not involve Article 6, Section 171, of the Mississippi Constitution; Section 9-19-17, they contend, simply codifies Article 6, Section 177A, of the Mississippi Constitution. Under the Attorney General’s interpretation, Section 9-19-17’s “statement that a judge’s removal renders the judge ‘ineligible’ for future office is nothing more than a restatement that removal by the Supreme Court for misconduct under Article 6, Section 177A[,] is permanent.” The *1049 Attorney General insists that there is a fundamental difference between the qualifications a candidate must meet to be elected as justice court judge, which are governed by Article 6, Section 171, and the sanction of removal, which is governed by Article 6, Section 177A
¶40. The Attorney General cites this Court’s decision in In re Lloyd W. Anderson, 412 So.2d 743 (Miss. 1982). In Lloyd W. Anderson, the Mississippi Commission on Judicial Performance recommended that this Court remove Justice Court Judge Lloyd W. Anderson from office. Lloyd W. Anderson, 412 So.2d at 743-44. Ultimately, this Court agreed with the Commission and removed Anderson from office. Id. at 748. While analyzing the history of Constitution Section 177A, we said:
[t]he provisions of Section 177A have been implemented by legislative enactments providing for a commission on judicial performance, the terms of office of its members, authority as to procedures before it, and its administration. Miss. Laws, ch. 511 (1979); Miss. Laws, ch. 385 (1980) (codified at Mississippi Code Annotated § 9-19-1 et seq. (Supp. 1981)).
Id. at 744. And in the next sentence, this Court quoted Section 9-19-17’s language that “[a] justice or judge removed by the supreme court ... is ineligible for judicial office.” Id. See also In re Stewart, 490 So.2d 882, 883 (Miss. 1986) (observing that Article 6, Section 177A, is implemented by Mississippi Code Section 9-19-1 et seq. and specifically quoting Section 9-19-17). Based on this language, the Attorney General argues that Article 6, Section 177A, of the Constitution and Mississippi Code Section 9-19-17 work in harmony, and that removal under both is permanent.
¶ 41. In response, Thompson argues that the Attorney General’s argument is flawed because - “Mississippi Constitution Section 9-19-17 is different from those statutes which merely provide “terms of office of [the Commission’s] members, authority as to procedures before [the Commission], and [the Commission’s] administration.” Thompson insists instead that Section 9-19-17 creates an additional qualification for the office of justice court judge. Further, Thompson asserts that the idea that removal from office is permanent is refuted by the very enactment of Section 9-19-17, because, if the Constitution already granted this Court the power to prohibit a removed judge from holding future office, Section 9-19-17 would be superfluous.
¶ 42. In support of his position, Thompson cites this Court’s decision in Montgomery v. Lowndes County Democratic Executive Committee, 969 So.2d 1, 2 (Miss. 2007), in which Monique Brooks Montgomery sought to qualify as a candidate for justice court judge. The Lowndes County Democratic Executive Committee refused to qualify Montgomery because, although she was a resident of the county, Montgomery did not reside in the subdistrict in which she sought to run. Id. The Lowndes County Democratic Executive Committee based its disqualification on Mississippi Code Section 23-15-359(8) (Rev. 2001), which provided that “[t]he appropriate election commission shall determine whether each candidate is a qualified elector of the ... county or county district they seek to serve.” Id. The trial court examined this statute in conjunction with Article 12, Section 250, of the Mississippi Constitution and determined that the legislature “intended that residency requirements in county districts apply to candidates for justice court judge.”[5] Id. *1050 Montgomery, appealed, arguing that she satisfied the only constitutional requirements to run for justice court judge. Id.
¶ 43. In the majority opinion, this Court noted that
[t]he Constitution of 1890 creates a series of requirements for those wishing to qualify as candidates for the office of justice court judge. Along with providing a four-year term of office and placing educational requirements on those persons elected after 1976, the Constitution requires that “[e]ach justice court judge shall have resided two (2) years in the • county next preceding his selection.”
Id. (citing Miss. Const. art. 6, § 171). The majority recognized that Article 12, Section 260, of the Constitution allows the legislature t'o fix additional requirements, for offices “where no other qualification than that of being a qualified elector is provided by [the Mississippi] Constitution.” Id. at 3. Because Article 6, Section 171, did in fact create additional qualifications for justice court judges, we concluded that Article 12,- Section 250, did not apply and that, as such, “[a] statute crafted by the Legislature may not provide for changes in the justice court judge section of the Constitution. Only an amendment may accomplish the task of altering the Constitution.” Id. at 3 (citing Saxon, 223 So.2d at 624).
¶44. In Wynn v. State, 67 Miss. 312, 7 So. 353, 354 (1890), this Court considered whether the legislature’s decision to create an educational qualification for the office of’ county superintendent was permitted by the Constitution. Although this Court determined that such a qualification was “a just and proper condition of eligibility for office,” it concluded the legislature’s action' violated the Constitution. Id. at 355. In doing so, this Court stated:
It is thus seen that the only safe course is to deny the right of the legislature to add to any office created by the constitution any qualification for the incumbent not imposed by the constitution itself. As offices were created by it, and the subject of qualification dealt with, and special .requirements made for certain offices, and general requirements as to all, it must be assumed that it prescribes all that was intended, and that none can be added, however appropriate they may be.
Id. (emphasis added). Thompson argues that, even though it may be “just and proper that a judge removed from office should never hold office again,” the legislature still is without authority to add such qualification to the Constitution,
¶ 45, Thompson next directs this Court’s attention to its decision in Mississippi Commission on Judicial Performance v. Darby, 143 So.3d 564 (Miss. 2014). In Darby, the Mississippi Commission on Judicial Performance and Judge Darby entered into an “Agreed Statement of Facts and Proposed Recommendation” which proposed that Darby be “removed from office, prohibited from holding judicial office in the future, and assessed costs of $200.” Darby, 143 So.3d at 565. In considering the recommended sánction, this Court noted that:
The jointly recommended sanction requires us to recognize the limits of our constitutionally vested powers in these matters. Included in the recommended sanctions, agreed to by Judge Darby, ¾ that she be “prohibited from holding *1051 judicial office in the future.- Our constitution does not expressly empower this Court to order such a prohibition.”
Id. at 568 (emphasis added). The Court also inserted a footnote, stating:
We ordered that the parties file supplemental briefs addressing this Court’s authority to prohibit a judge from holding judicial office in the future.. In its supplemental brief, the Commission acknowledged that this Court lacks the constitutional authority to impose such a sanction, but requested that we note that the Legislature has provided that a removed judge is “ineligible for judicial office.” See Miss. Code Ann. § 9-19-17 (Rev. 2002).
Id. at n.7. Ultimátely, this Court removed Judge Darby from office, but it did.not explicitly prohibit Darby from seeking office in the future. Id. at 570.
¶46. Presiding Justice Dickinson authored a special concurrence and observed that “[i]n explaining why the prohibition [that Judge Darby be precluded from seeking future judicial office] is not included in the sanctions we order today, we pointed out that neither this Court nor the Commission ... has authority to impose a sanction that prohibits a person from seeking and holding judicial office in the future.” Id. at 571. Justice Dickinson also noted that “including [Section 9-19-17’s] citation [in the footnote] ... in no way adjudicates the constitutionality of the statute.”
¶ 47. In Proctor, 392 S.W.3d at 361-62, which the majority cites to support its argument that removal from office is permanent, the judge who previously, had been removed challenged, as does Thompson in the present case, the constitutionality of Arkansas Code Section 16-10-410(d), arguing that the statute created an additional qualification for the office of circuit judge. That statute provided that “[a]ny judge removed from office [by the- Arkansas Supreme Court] cannot be appointed or elected thereafter to serve as a judge.” Ark. Code Ann. § 16-10-410(d) (Supp. 2009) (repealed by Acts of 2015, Act 939, § 2, eff. July 22, 2015).
¶ 48. The Arkansas Secretary of State, the Pulaski County Election Commission, and the Arkansas Judicial Discipline and Disability Commission argued the restriction did not create an additional qualification; rather, they argued, it was an “individualized limitation on the ability to hold office as part of a constitutionally authorized sanction for judicial misconduct.” Proctor, 392 S.W.3d at 363. The Arkansas Supreme Court was not convinced, finding that it did not “agree with appellees’ contention that the statute is constitutional because it merely ‘clarifies’ a qualification already created by amendment 66 of the Arkansas Constitution.” Id. Ultimately, the Arkansas Supreme Court found the statute unconstitutional because it “encroached] on the power reserved to the judiciary to interpret the law” and created an additional qualification for office. Id.
¶49. So, while the Arkansas Supreme Court determined that removal from office precluded a judge’s seeking reelection in the future, it nevertheless ruled that the statute declaring removal to be permanent was unconstitutional because it added to the constitutional qualifications of a judge. Yet the majority in the present ease declines to address Thompson’s identical argument finding that those arguments “need not be addressed.” Maj. Op. ¶ 14.
¶ 50, Section 9-19-17 alters Article 6, Section 171, of the Mississippi Constitution to require persons running for the office of justice court judge not to have been removed from judicial office.. Consequently, I would hold that Section 9-19-17 is unconstitutional because the legislature “cannot *1052 by statutory enactment alter or nullify a clear, unambiguous mandate of the Constitution.” Saxon, 223 So.2d at 624; Montgomery, 969 So.2d at 3. The Arkansas Supreme Court’s analysis of the identical issue in Proctor is persuasive and, accordingly, Section 9-19-17 does more than simply implement the Constitution. It creates an additional qualification for those who run for justice court judge in Mississippi: that the judge shall not have been removed from judicial office. The legislature is without authority to add to the constitutional qualifications. See Wynn, 7 So.2d at 355.
DICKINSON, P.J., JOINS THIS OPINION.

. Amendment 66(c) of the Arkansas Constitution states, in pertinent part, that:
If, after notice and hearing, the Commission by majority vote of the membership determines that grounds exist for the discipline of a judge or justice, it may reprimand or censure the judge or justice, who may appeal to the Supreme Court. The Commission may, if it determines that grounds exist, after notice and hearing, and by majority vote of the membership, recommend to the Supreme Court that a judge or justice be suspended, with or without pay, or be removed, and the Supreme Court, en banc, may take such action.
Ark. Const, amend. LXVI(c).

. Section 121 of the Kentucky Constitution provides, in pertinent part, that:
Subject to rules of procedure to be established by the Supreme Court, and after notice and hearing, any justice of the Supreme *1046 Court or judge of the Court of Appeals, Circuit Court or District Court may be retired for disability or suspended without pay or removed for good cause ....
Ky. Const. § 121.

.' The Louisiana Constitution provides, in pertinent part, that:
Oh recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
La. Const. Ann. art. V, § 25(C).

. Though no specific citation appears in the court’s opinion, Section 26 of Louisiana Supreme Court Rule 23 provides that ‘‘[a]ny former judge who has been removed from office by the Supreme Court pursuant to La. Const. Art. V, § 25(C) cannot and is prohibited from qualifying to become a candidate for any judicial office until certified eligible by this Court.” La. Sup. Ct. R. 23, § 26.

. Article 12, Section 250, of the Mississippi Constitution provides that:
[a]ll qualified electors and no other shall be eligible for office, except as otherwise pro *1050 vided in this .Constitution; provided, however, that as to an office where no other qualification than that of being a qualified elector is provided by this Constitution, the Legislature may, by law, fix additional requirements for such office.
Miss. Const. art 12, § 250.